# G. AND S. C. BUCKINGHAM, Respondents, v. ELIHU C. FITCH, Appellant.

## Kansas City Court of Appeals, May 25, 1885.

1. PLEADING—SUFFICIENCY OF AVERMENTS SETTING UP A GAMBLING CONTRACT—"OPTIONS."—In setting up the defence of a gambling contract, it is not essential to state by express averment that the defendant knew or intended that the contract of purchase to be made for him should be a gambling contract. It is enough to aver that the contract actually made by plaintiffs with the unknown vendor "was immoral, illegal, and void, for that it was mutually agreed and understood by and between the parties to said contract that no grain should be delivered, and that the only subject matter of said pretended purchase and sale contracted for, was that the parties thereto, should, at the time agreed upon for the delivery of said grain, settle the difference in price agreed to be paid, and the market price at the time mentioned in said contract for the delivery of said grain." Following *Kent v. Miltenberger*, 13 Mo. App. 508.

2. —— DEFENCE OF ILLEGALITY—CASE ADJUDGED.—In this case in suit upon a note the defence substantially set up by answer was this: "That plaintiffs at defendant's request, and *as his brokers*, engaged to and did enter into a contract for the purchase of grain, but with the understanding that none was to be delivered, but the difference in price should be settled for between time of contract and time of delivery, in *their own names*, but for him, and that the only consideration for the note sued upon is a loss arising out of such contract paid by plaintiffs; that such contract was a gambling contract, illegal and void, and against public policy, and said consideration is insufficient to support the note." *Held*, that the contract alleged in the answer is clearly a gambling contract and therefore void. *Held*, further that although the contract be valid on its face, it is competent to show by extrinsic evidence that it was intended by the contracting parties, not as a commercial transaction, but as a mere wager on the future of the market, and that the burden of proving the illegal intent would be on the party attacking the validity of the contract. Following *Kent v. Miltenberger*, 13 Mo. App. 507.

3. —— CONTRACT GROWING OUT OF AN ILLEGAL ACT, AND CONNECTED WITH IT.—"Where the contract grows immediately out of and is connected with an illegal or immoral act, a court of justice will not lend its aid to enforce it. And if the contract, in fact, be only connected with the illegal (*or immoral*) transaction, and growing immediately out of it, *though it be in fact a new contract*,

*Toler*

it is equally tainted by it." *Armstrong v. Tabor,* 11 Wheaton (U. S.) 279. And if the contract be not an illegal act, but one contrary to public policy, it is an immoral act, and there is no difference between the effect of an illegal and immoral act. These views are in conflict with the English authorities, which distinguish between contracts which are *illegal* and contracts which are *void,* but this court cannot make any distinction between a contract, such as the contract in this case, immoral in its nature and tendency, and void as against public policy, and a contract illegal and prohibited by law. See *First Nat. Bk. v. Oskaloosa P. Co.,* Supreme Court, Iowa. N. W. Reporter. Vol. 23, p. 255.

APPEAL from Johnson Circuit Court, HON. NOAH M. GIVAN, J.

*Reversed and remanded.*

Statement of case by the court.

This is an action instituted by plaintiffs on a promissory note made by defendant to them for the sum of $1,383.36.

The amended answer of defendant is as follows : '

"Comes now defendant, and for his amended answer to the first count in plaintiffs' petition, says that at the dates hereinafter set forth, the said plaintiffs as co-partners, were engaged in business in the said city of St. Louis, in said state of Missouri, in buying and selling what is known to the commercial world as "options, or futures" in grain or other commodities, and in making for customers wagering contracts in the pretended purchase or sale of imaginary grain and other products of commerce. That, while so engaged, some time in the month of January, 1880, the said plaintiffs, in their own name, pretended to purchase on the market at said city of St. Louis, of some one, to defendant unknown, large quantities of wheat for this defendant, to be thereafter delivered at and for a certain price per bushel, pretended to be agreed to be paid at the time pretended to be agreed upon for the delivery of said grain. That from and after the date of said pretended purchase, and the time specified in said pretended contract of purchase and sale for the delivery, the market value of the quantity of grain

mentioned in said pretended contract, depreciated to the extent of the money advanced to and put up by this defendant as a "*margin*" with said plaintiffs, and the amount specified in the note described in the first count in plaintiffs' petition, which latter amount the plaintiffs claimed to have been paid to said unknown vendor in the settlement of said difference between the price to be paid and the said market value, and that said note was given in settlement of said amount so claimed to have been paid as aforesaid and for no other purpose, and upon no other or further consideration.

"Defendant further alleges the truth to be, that, although said contract of purchase and sale was regular in form, yet the sale was not made in good faith, but was immoral, illegal and void, for that it was mutually agreed and understood by and between the parties to said contract that no grain should be delivered, and that the only subject matter of said pretended purchase and sale contracted for was that the parties thereto should, at the time agreed upon for the delivery of said grain, settle the difference in price agreed to be paid and the market price at the time mentioned in said contract for the delivery of said grain. That said contract was a mere wagering contract as to the future value of grain at the time mentioned for its delivery, and, therefore, immoral and illegal. That the money so claimed to have been paid out by plaintiffs in settlement of said difference was paid out by them without the knowledge or consent of this defendant, and to carry out the illegal undertaking so entered into by said plaintiffs. That said note, having been given as aforesaid, upon and for no other or further consideration than in the settlement of the sums so claimed to have been paid out and expended by plaintiffs for said immoral and illegal purpose, is likewise void and of no binding effect.

"On the filing of the foregoing amended answer, plaintiffs moved for judgment on the pleadings, which motion was by the court sustained, and judgment entered against said defendant for the principal and interest of said note, amounting to $1,711.90."

From this judgment the defendant has appealed to this court.

SAMUEL P. SPARKS, for the appellant.

I. The defence set up in the *original* answer as in the *amended* answer was sufficient. A contract to pay at a certain future time an amount equal to any *rise* in the market price of any article of commerce in consideration that the other party will pay an amount equal to any *fall*, is void as a *gambling* contract. *Lyon v. Culbertson*, 83 Ill. 33; *Logan v. Musick*, 81 Ill. 415; *Pixley v. Boynton*, 79 Ill. 351; *Pickering v. Cease*, 79 Ill. 328; *Tenny v. Foote*, 4 Bradw. 594; *Beveridge v. Hewitt*, 8 Bradw. 467.; *Colderwood v. McRea*, 11 Bradw. 543; *Corbitt v. Underwood*, 83 Ill. 324; *Webster v. Sturgis*, 7 Bradw. 560; *Cole v. Milmme*, 88 Ill. 349; *In re Chandler*, 13 Am. Law Reg. (U. S.) 310; *In re Green*, 7 Biss. 338; *Gilbert v. Gaugar*, 8 Biss. 214; *Melchert v. Am. Un. Tel. Co.*, 3 McCrary 521; *Sawyer v. Taggart*, 14 Bush 727; *Gregory v. Wattowa*, 58 Iowa 711; *Story v. Solomon*, 71 N. Y. 420; *Bigelow v. Benedict*, 70 N. Y. 202; *Harris v. Tumbridge*, 82 N. Y. 92; *Yerkes v. Solomon*, 11 Hun. 473; *Parsons v. Taylor*, 12 Hun. 282; *Kingsbury v. Kernan*, 20 Am. Law J. 14; *Ruchizky v. DeHaven*, 97 Pa. 202; *Fareira v. Gabell*, 89 Pa. 89; *Bruce's Appeal*, 55 Pa. 294; *Smith v. Bonvier*, 70 Pa. 325; *Dickson's Ex'r. v. Thomas*, 97 Pa. 278; *Kirkpatrick v. Bonsall*, 72 Pa. 155; *Patterson's Appeal*, 16 Cent. L. J. 461; *Gregory v. Wendall*, 39 Mich. 337; 40 Mich. 432; *Shaw v. Clark*, 49 Mich. 384; *Rumsey v. Berry*, 65 Me. 574; *Williams v. Tiedman*, 6 Mo. App. 269; *Waterman v. Buckland*, 1 Mo. App. 45; *Cobb v. Pall*, 16 Cent. L. J. 453; *Kent v. Miltenberger*, 16 Cent. L. J. 433; 52 Wis. 593; 80 N. C. 204; 11 Wash. Law Rep. 418; 7 Gray 160; 3 Allen 238; 10 Allen 337; 103 Mass. 313; 10 Allen 346; 3 Lea. 740; 55 N. Y. 425; 90 Pa. 38; 75 Pa. 166; 3 Brewst. 131; 27 Vermont 240; 7 Biss. 540; 6 Biss. 53; 1 Biss. 177; 83 N. Y. 92; 77 N. Y. 612; 2 Sup. Ct. Rep. (Desty) 630; Ir. Rep. 2 C. L. 220; 55 Wis. 354; 48 Conn. 116; 20 Gratt. 206; 59

Iowa 435 ; 11 C. B. 536 ; L. R. 4 Q. B. D. 685 ; 5 Woods 554 ; 33 Law J. (1864) 55 ; 3 Exc'r. 465 ; 10 Exc'r 614 ; 7 Neb. 125.

II.   Our statute prohibits a recovery upon any contract founded on a *gaming* consideration (sect. 5722, Rev. Stat. Mo. 1879).   *Williams v. Wall*, 60 Mo. 318.

III.   Brokers and commission merchants cannot recover for losses paid or commissions earned under an agreement by which a customer is to deal in *illegal options*, and a promissory note given in settlement of such transactions will be void, even in the hands of a *bona fide* holder for value before maturity.   *Williams v. Wall*, 60 Mo. 318 ; *Koch v. Branch*, 44 Mo. 542 ; *McKinnell v. Robinson*, 3 M. & W. 434 ; *Cannon v. Bryce*, 3 B. & Ald. 170 ; *Hooker v. Knab*, 26 Wis. 211 ; *Dixon v. Thomas*, 93 Pa. 278 ; *Fareira v. Gabell*, 89 *Ib.* 89 ; *Kirkpatrick v. Bonsall*, 72 *Ib.* 155 ; *Lyon v. Culbertson*, 83 Ill. 328 ; 79 Ill. 328 ; 71 Ill. 579 ; 95 Ill. 109 ; 4 Bradw. 594 ; 7 Biss. 338 ; *Armstrong v. Toler*, 11 Wheaton (U. S.) 258.

IV.   The court erred in not permitting defendant to file his *amended answer*, except upon payment of costs then accrued.   The only change was that the amended answer set up that the payment forming the consideration of the note in suit was made *without the knowledge or consent* of defendant.   It further appears that the court on a former occasion overruled an objection *ore tenas* of the same nature.   The amendment in no way prejudiced the plaintiffs, as the trial proceeded upon their part, as though it had never been made. Sect. 3567, Rev. Stat.; *Riddles v. Aikin*, 29 Mo. 453.

GEO. E. SMITH, P. R. FLITCRAFT and S. T. WHITE, for respondents.

I.   All the exceptions saved by appellant to action of trial court in holding original answer insufficient were waived by pleading over.   *Ely v. Porter*, 58 Mo. 158 ; *Scoville v. Glassner*, 79 Mo. 449.

II.   The trial court did not abuse its discretion in requiring appellant to pay costs as a condition upon its

leave to amend.    Under the circumstances the payment
of costs was a proper condition with the leave to amend.
The section of the statute cited (3567) provides for
amendments "upon such terms as may be proper."
Neither does the case cited (29 Mo. 453) support the
point made.    The sufficiency of the answer was a ques-
tion of law.    If the trial court erred in holding it
insufficient the appellant should have stood upon his
pleading and saved his exception.    In that case it would
have been improper for him to allege surprise.    *Hite v.
Lenhart*, 7 Mo. 22.

III.    The motion for judgment on the pleadings was
properly sustained.    The amended pleading was in
all substantial respects identical with the original,
which the court had just held insufficient.    The only
change was that the allegation "that plaintiffs knew
the illegal nature of the grain contracts" was *dropped
out*, and an averment that "plaintiffs paid the money
forming the consideration of the note without the knowl-
edge or consent of the defendant" was inserted.    The
latter averment was immaterial.    "A subsequent express
promise to pay is equivalent to a previous request."
*Armstrong v. Toler*, 11 Wheaton 274.    If the original
answer was insufficient the amended answer is also.

IV.    The court gave judgment *notwithstanding* the
answer.    The question is thus presented precisely as
though the amended answer had been stricken out and
judgment entered for plaintiffs.    It was the same old
answer which had been held bad, and it was properly
disregarded, if as a pleading it was *insufficient*, as the
court held it.    Let this sufficiency be examined.    The
making and delivery of the note sued on is not denied.
An attempt is made to show that the note was given for
money paid by plaintiffs in settlement of an illegal con-
tract, and the inference is drawn from this fact that the
note itself is illegal and void.    Here are *three* contracts
pleaded.    1.    The contract of agency to buy grain for
defendant and defendant to indemnify plaintiffs against
liabilities incurred within the scope of such agency.
2.    The contract made by plaintiffs for defendant as his

agent, settled by plaintiffs without the knowledge or consent of defendant. 3. The note given in reimbursement for such settlement. Upon the facts pleaded there was no agreement for compensation for plaintiffs' services in the contract of agency. The *first* and *third* of these contracts were legal and valid—the court is not called upon to enforce the *second* or so-called illegal grain contract. This action is based upon the contract of agency alone. The answer shows that plaintiffs made the contract "in their own name" for the benefit of defendant. If they had authority to do this, they also had authority to settle the liability thus created, with the unknown vendor without consulting defendant, being answerable only for breach of good faith. But the pleading shows defendant himself was the real principal in the contract.

V. Even if the grain contract pleaded was illegal and void, it does not follow that the note in suit is, also, illegal and void. The plaintiffs are not shown to have had any beneficial interest in the grain contract—they simply acted as agents of defendant without any interest in the result of it. The defendant and the unknown vendor were the only parties who could gain or lose by the contract in any event—the taint of illegality does not reach plaintiffs. The plaintiffs paid out for defendant the amount of money for which note was drawn; it was not advanced to enable defendant to engage in *illegal trade*, and there is a plain distinction drawn by the authorities between money so advanced and money *paid at the request* of the person so engaged to settle a loss by him incurred. The obligation of the new contract cannot be avoided by showing that the grain contract was illegal. *Armstrong v. Toler*, 11 Wheaton 258; *Michael v. Bacon*, 49 Mo. 474; *Soulard v. Peck*, 49 Mo. 477; *Howell v. Stewart*, 54 Mo. 400.

VI. Section 5722, Revised Statutes, does not make the contracts named in it illegal—it simply declares them void. There is no prohibition—no penalty attached. The sections of the criminal code (*1547, 1548*

and *1549*) are not applicable. The courts distinguish between illegal and void contracts (such as are absolutely prohibited), and such as are simply void and unenforceable. *Armstrong v. Toler*, 11 Wheat. 258; *Lehman v. Strossberger*, 2 Woods. 554; *Marshall v. Thurston*, 67 Tenn. (3 Lea.) 740; *Warren v. Hewitt*, 45 Ga. 501; *Clarke v. Fox*, 7 Biss. 540; *Cannon v. Bryce*, 3 B. & Ald. 179; *Knight v. Fitch*, 15 C. B. 566.

Opinion by HALL, J.

The only point for our determination is whether the matter contained in the answer constituted a defence to this action. Thus two questions are presented : first, was the contract of purchase of wheat, alleged in the answer to have been made by the plaintiffs, void ; and, second, if such contract was void, was the contract between plaintiffs and defendant, in pursuance of which the former paid for the latter the amount of the loss incurred by the purchase of the wheat, so tainted by the invalidity of the former contract as to be also void?

1. It may be, as contended by plaintiffs, that in the answer there is no express averment that the defendant knew or intended that the contract of purchase to be made for him by them should be a gambling contract, but, while this may be true, strictly speaking, the evident meaning of the answer is to the contrary. However this may be, the answer does aver, in the language of Thompson, J., *Kent v. Miltenberger* (13 Mo. App. Rep. 508), defining a gambling contract of the kind in issue, that the contract actually made by plaintiffs with the unknown vendor for wheat "was immoral, illegal and void, for that it was *mutually agreed and understood by and between the parties to said contract that no grain should* be delivered, and that the only subject matter of said pretended purchase and sale contracted for, was that the parties thereto should, at the time agreed upon for the delivery of said grain, settle the difference in price agreed to be paid and the market price at the time mentioned in said contract for the delivery of said grain."

And the answer also shows that, after the making of

said contract by plaintiffs, the defendant ratified the same as made by plaintiffs by giving them the note sued on in settlement of the amount of loss incurred on account of the contract, which had been previously paid by plaintiffs. So that the answer squarely presents to this action this defence, that plaintiffs at defendant's request and as his brokers engaged to and did enter into the contract above set out in their names, but for him, and that the only consideration for the note sued on is a loss arising out of such contract paid by plaintiffs; that such contract was a gambling contract, illegal and void, and against public policy, and the said consideration is insufficient to support the note. That the contract was on its face valid is not conclusive, and it was competent to show "by extrinsic evidence," that it was intended "by the contracting parties, not as a commercial transaction, but as a mere wager on the future of the market." *Kent v. Miltenberger*, 13 Mo. App. Rep. 507.

The burden of proving the illegal intent would be on the party attacking the validity of the contract. *Ibid.*

The contract alleged in the answer to have been made by plaintiffs with the unknown vendor for the purchase of wheat, was clearly a gambling contract and, therefore, void. *Ibid.* *Williams v. Friedman*, 6 Mo. App. Rep. 269; *Waterman v. Buckland*, 1 Mo. App. Rep. 45.

2. As to the second question the law is clearly, "that where the contract grows immediately out of, and is connected with, an illegal or *immoral* act, a court of justice will not lend its aid to enforce it. And if the contract in fact, be only connected with the illegal ("*or immoral*") transaction, and growing immediately out of it, though it be in fact a new contract, it is equally tainted by it." *Armstrong v. Toler*, 11 Wheaton 279.

The contract of purchase of the wheat in this case was not an illegal act, but it was contrary to public policy and was an immoral act as already in effect stated by us. So far as this second question is concerned, we perceive no difference between the effect of an illegal and an immoral act. The same rule applies to both acts.

The only difficulty in this case is in the application of the well-known rule of law, laid down in the 11th Wheaton, to the facts.

In our opinion, the contract between plaintiffs and defendant, as appears from the answer, was not merely, that plaintiffs should pay the loss already incurred by defendant in the consequence of the gambling wheat "deal," but it was that the plaintiffs in their names, but really for the defendant, should conduct the gambling enterprise, manage the gambling transaction, collect the profit, if any, arising therefrom, and account to the defendant therefor, and pay the loss incurred therein, if loss there should be, which the defendant should refund to them. There is no pretense that plaintiffs by their contract were to, or did pay, any other loss of defendant than the loss resulting from the contract made by the plaintiffs. It seems clear to us that, unless the plaintiffs had conducted the gambling enterprise and managed the gambling transaction, they would not, under their contract with defendant, as set out in the answer, have been authorized to settle any loss of defendant. The right of plaintiffs to have refunded the amount of the loss paid by them does not depend upon the payment thereof alone, but depends upon the payment of the loss arising from a "deal" made by them for defendant. This right of plaintiffs, then, is not only tainted with, but actually depends, upon the immoral "deal" of plaintiffs.

The plaintiffs are not in the position of one, who has paid for another a loss incurred by the other at a gambling table; but they are in the position of one, who has undertaken to furnish the necessary money to risk at a gambling table, to perform the act of gambling himself, and who has completed the undertaking, who has met with loss in so doing, and who has paid the loss. How, in the case at bar, can the payment of the loss be separated from the act of gambling done by the plaintiffs themselves under their agreement, in consequence of which the loss resulted? Had the "deal" resulted in a gain instead of a loss, who will contend that defendant could have maintained an action for the amount of the

gain, upon the plaintiffs' refusal to account for it? The plaintiffs can have no better right to recover the loss paid by them, than the defendant would have to collect the gain received by them.

The purpose for which the defendant employed the plaintiffs was an immoral purpose; it necessarily follows that the contract of employment was immoral and invalid.

In *Kent v. Miltenberger, supra,* in speaking of *Barnard v. Backhans* (52 Wis. 593), it is said, "the court deemed it clearly and satisfactorily proven, that, in respect of some of the transactions, none of the parties intended an actual sale and purchase of wheat, but that the whole thing was to be settled by payment of differences. The court held just as we should have held upon similar proof that such transactions were gambling transactions and that part of the consideration of the note, *given to the broker,* being tainted and void."

In *Barnard v. Backhans, supra,* it is also said, "now, what Bartlett & Mohr were employed to do— what the evidence shows they did do—was to enter into these gaming contracts for Backhans. They were engaged equally with him in the transaction of illegal business; and the fact that they were executing the orders of their principal does not render their conduct any the less blameworthy. All were engaged in the furtherance of illegal objects—making contracts which were unlawful; consequently a note given for money which they paid in the settlement of their contracts is tainted with illegality."

In the case at bar the contract was not illegal, but it was immoral and against public policy, and we can see no reason why the principle of the case of *Barnard v. Backhans* does not apply with full force.

In *Kent v. Miltenberger, supra,* it is also said, "the same may be said of *Teeney v. Foot* (4 Bradw. 594). Whatever may have been said in the decision of that case * * * the indisputable fact was, that the agreement between the principal and broker was that the dealings of the latter for the former 'should only be in options, and that no produce should be delivered or received on his account, but that the transactions should be settled

upon the differences.' " " This contract," added the learned judge, " was fully proved and without any conflict of evidence to it. Now, as there was a statute in Illinois prohibiting the dealing in 'options,' it was very clear that a note, springing out of such a consideration, was void. Upon such a state of facts, we should hold the same way *without the aid of such a statute * * *"* While it is true that the court, in the case last quoted from, refers to and disapproves the case of *Farreira v. Gabell* (89 Pa. St. 89), it disapproves that case, in so far only, as it defines a gambling contract. That portion of the Pennsylvania case holding, " that one who should undertake to make a bet or wager for another, and advance the money staked would have no right of action against his principal in the event of loss," is not disapproved. But, on the contrary, Thompson, J., in *Kent v. Miltenberger, supra,* as clearly appears from the quotations herein from the opinion in that case, lays down the same principle. As said by the trial court in *Farreira v. Gabell, supra,* and approved by the supreme court of Pennsylvania, we " can see no difference between such a case ...... as the present case ...... and that of any agent who renders services and expends money in conducting any other gambling operation."

It is true that the views herein expressed are in conflict with the English authorities cited in the plaintiffs' brief. In those authorities a distinction is clearly made between contracts which are illegal and contracts which are void. And under those authorities plaintiffs would be entitled to recover despite the matter contained in the answer. But, with the views entertained by us, we cannot make any distinction between a contract such as the contract in this case, immoral in its nature and tendency, and void as against public policy, and a contract illegal and prohibited by law. We are firmly of the opinion that the contract between plaintiffs and defendant, as pleaded in the answer, by which plaintiffs undertook to act as defendant's brokers in making gambling option deals, was an immoral contract, and was void as against public policy; and that the parties

thereto must remain exactly where they have placed themselves by that contract; and that the defence set up in the answer is a sufficient defence to this action, and should not have been stricken out. See *1st Nat'l Bank v. Oskaloosa P. Co.*, Sup. Ct. Iowa, vol. 23, p. 255, N. W. Reporter.

The judgment of the circuit court will be reversed and the cause remanded. Ellison, J., concurs; Philips, P. J., concurs in result.