BRUNETTA HARRISON, Respondent, v. B. F. McCLUNEY, Administrator of W. H. WELLS, Deceased, Appellant.

Kansas City Court of Appeals, November 19, 1888.

1. **Contract**: WHEN ENFORCEABLE THOUGH GROWING OUT OF ILLEGAL ACT: CASE ADJUDGED. Notwithstanding the law is that a subsequent, independent contract, founded on a new consideration, is not contaminated by a precedent illegal act, although such illegal act was known to the contractor, this is always understood with the proviso, that the contractor has no interest or part in the illegal transaction and took no part in the scheme to carry it out. *Held* that the contract here was not unconnected with the illegal act out of which it grew, but was made with the view of aiding and effectuating it.

———: DEMAND REQUIRING AID FROM ILLEGAL TRANSACTION NOT ENFORCEABLE. An action will not lie to recover a demand, if, to establish it, the plaintiff requires aid from an illegal transaction; or is under the necessity of showing and depending upon an illegal agreement to which he had been a party.

*Appeal from Johnson Circuit Court.*—HON. CHARLES W. SLOAN, Judge.

REVERSED.

The case is stated in the opinion.

*S. G. Kelley* and *O. L. Houts*, for the appellant.

(1) The petition does not state, nor the evidence disclose, a cause of action in favor of plaintiff. That Wells, George W. Harrison being his surety on a note, promised that he would save Brunetta Harrison, plaintiff, harmless from all loss she might sustain by reason of any judgment or proceeding which had been or might thereafter be commenced against her or said

George W. Harrison, on account of the indebtedness and suretyship of said George W. Harrison, could never authorize a recovery on plaintiff's behalf. She being in no manner connected with the note, no proceeding thereon could reach her or damage her. A proceeding against George W. Harrison could not damage plaintiff. (a) The allegation is not that the promise was to indemnify plaintiff for what George W. Harrison might suffer, but for what she might suffer by a proceeding against him, and that only his interest in the lands was sold, which deprived her of no legal right. (b) G. W. Harrison would not be damaged or entitled to any indemnity as surety until he paid the debt, which he has not done, even if the promise had been to indemnify plaintiff for what he suffered. The allegation and positive proof that plaintiff had received a voluntary conveyance of this land in fraud of Snell, Glass and other creditors of George W. Harrison, which was set aside by a court of equity, instead of aiding plaintiff, must defeat her action. She cannot plead and prove her own wrongful and illegal act, and recover by reason thereof in a court of law. *Perry v. Calvert*, 22 Mo. 361, 363; *Parsons v. Randolph*, 21 Mo. App. 353; *Buckingham v. Fitch*, 18 Mo. App. 91; *Turley v. Edwards*, 18 Mo. App. 676. The allegations and proof of plaintiff show that the promise of Wells was part and parcel of the illegal conveyance. George W. Harrison testifies, "I was defending this suit of Snell against me, and I expect to defend it. I had these notes in my possession; I did not feel disposed to keep them and fight this suit." "Where a contract grows immediately out of, and is connected with, an illegal act, a court of justice will not lend its aid to enforce it." Plaintiff has alleged and proved the illegal, fraudulent conveyance as necessary to recovery, making it a part of her case, and a part of the promise of Wells, which is therefore void. (2) The proof failed to sustain even the averments of the petition, and according to her own evidence defendant's instruction should have been

given. (3) The agency of George W. Harrison was not established, and the court should have excluded his evidence. *Mfg. Co. v. Tinsley*, 72 Mo. 458. And while the petition states that plaintiff was to receive the benefit of the contract alleged she was not one of the contracting parties. G. W. Harrison furnished the consideration for the alleged promise of Wells, and contracted with him. Wells is dead, the suit is against his administrator; and G. W. Harrison was not a competent witness. (4) Instructions one and two for plaintiff should not have been given. Instruction number one predicates plaintiff's right of recovery upon "any damages she might sustain by reason of any suit or suits instituted on said note against said George W. Harrison, by said Snell." "Suit or suits on said note against George W. Harrison by Snell" did not mean the suit by Snell and Glass to set aside plaintiff's deed, "but suit on the note" meant for debt and interest against George W. Harrison by Snell. Now, this suit was ended in judgment October 26, 1878. In the first place plaintiff's action is clearly barred by the statute, if any such issue had been tendered by the petition. In the second place, the proof was not shown that she paid any of this judgment on the note, or was out anything in defense of the suit, "by reason of the suit," and therefore suffered no damages. (5) The petition of plaintiff states, and her evidence shows, that the conveyance of Warren to her was voluntary. It was error, then, to permit G. W. Harrison to testify that plaintiff paid a valuable consideration for that conveyance. He should not have been permitted to testify as to his agency. This should have been proved by some one else. (6) The fact that Wells was in bankruptcy at the time the petition charges the notes were surrendered to him and his mere promise in lieu thereof taken was material, and defendant should have had the benefit of it.

*Samuel P. Sparks* and *W. W. Wood*, for the respondent.

(1) The appellant failed to call the attention of the court to its action in permitting George W. Harrison to testify as a witness in his motion for a new trial, and his complaint in that regard cannot now be heard. *Light v. Railroad*, 89 Mo. 108 ; *Snell v. Harrison*, 83 Mo. 651 ; *State v. Preston*, 77 Mo. 294 ; *State v. Emory*, 79 Mo. 461 ; *Hull v. Alexander*, 77 Mo. 296. There is a broad and well-defined distinction, to a legal mind, between the incompetency of a witness and incompetent testimony, the assignment of error in the motion. "The admission of incompetent testimony" did not call the attention of the court to the alleged incompetency of George W. Harrison as a witness. *Hill v. Alexander*, 77 Mo. 296. (2) George W. Harrison was a competent witness to the contract set up, he not being a party to the cause at issue and on trial. *Davis v. Looker*, 47 Mo. 140 ; 73 Mo. 546 ; 65 Mo. 305 ; 68 Mo. 72 ; 64 Mo. 142 ; 66 Mo. 429 ; 63 Mo. 290 ; 59 Mo. 187. (a) He was rendered competent although the husband of plaintiff, by reason of having acted as the agent of the plaintiff in the transaction at issue and on trial. R. S., sec. 4014. (b) George W. Harrison's agency was clearly and conclusively established by the testimony of Miss Belle Harrison, which was received without objection ; but direct and positive testimony is not required to establish the agency—it may be inferred from circumstances. *Hull v. Jones*, 69 Mo. 587 ; *McGinnis v. Mitchell*, 21 Mo. App. 493. (c) The bringing of this suit was a complete ratification of the agency of her husband ; the contract being for her benefit, her assent thereto will be presumed until dissent is manifested. *Ridge v. Olmstead*, 73 Mo. 573 ; *Mosman v. Binder*, 80 Mo. 585 ; *Ensworth v. King*, 50 Mo. 477. (3) The contention that the affidavit required by section 155, Revised Statutes, is jurisdictional is not well grounded, for even where the record does not disclose that it was made in the probate court on appeal, the appellate court will presume

it was made *ore tenus* in the probate court. *Million v. Ohnsorg*, 10 Mo. App. 432. (4) Plaintiff's cause of action did not arise until the final determination of the case of *Snell v. Harrison*, in the supreme court in October, 1884. A contract of indemnity that is contingent is a continuing contract, and the statute will not begin to run until the event happens upon which the same is founded. Wood on Lim. 265, 323, 14, 17; *Bushong v. Taylor*, 82 Mo. 660. (*a*) This was a personal action, and an administrator, like any other defendant, must plead limitation as a defense; he cannot raise it for the first time by an instruction. *Trammell v. Adams*, 2 Mo. 126; *Benoist v. Darby*, 12 Mo. 196; Bliss Code Plead., sec. 355; Wood Lim., sec. 7. (*b*) Any defense required to be, and not properly, pleaded cannot be raised by an instruction. *Cockrill v. Thompson*, 85 Mo. 510. (5) The appellant cannot raise the objection in this court that the amendment changed the cause of action by simply objecting *ore tenus* at the trial to the introduction of any evidence under the petition. No such ground appears in the motion for a new trial. The objection must be taken in some appropriate way, as by a motion to strike out the amended pleading. *Thieman v. Goodnight*, 17 Mo. App. 429; *Davis v. Ritchie*, 85 Mo. 501; *Bettes v. Magoon*, 85 Mo. 586. (6) If a cause of action was stated in the petition, there was no error in the instructions given for plaintiff. The court only did in giving them what it was its duty and province to do. *Callahan v. Warne*, 40 Mo. 131; *Powell v. Railroad*, 76 Mo. 80. The instructions asked by the defendant and refused were properly refused. *Chouteau v. Searcy*, 8 Mo. 733; *Jones v. Jones*, 57 Mo. 138; *Miller v. Marks*, 20 Mo. App. 369; *Chouteau v. Iron Co.*, 83 Mo. 73. (7) Where an unlawful act has been done, a subsequent, independent contract in reference thereto, founded on a new consideration, is not avoided by the prior alleged wrongful act. *Armstrong v. Toler*, 11 Wheat. [U. S.] 258. The agreement entered into between Wells, the promisor, and George W. Harrison, the promisee, for the benefit of respondent, was a new

contract, founded upon a new consideration, to-wit, the surrender by the promisee to the promisor of the notes, aggregating about six hundred dollars. It will be noted that the learned counsel, in citing *Armstrong v. Toler*, *supra*, as sustaining their theory that the contract was tainted with fraud, have committed the unpardonable offense of "*felo. de se.*"

ELLISON, P. J.—Plaintiff, who is the wife of George W. Harrison, presented to the probate court a claim of four hundred and sixty dollars against the estate of W. H. Wells. It was allowed in that court and also on appeal in the circuit court. The claim arose in the following manner: Harrison was Wells' security on a note for seven hundred dollars. Wells turned over to him, as indemnity against loss by reason of the suretyship, notes to the amount of four hundred and sixty dollars. Snell obtained judgment against Harrison for the amount of the note and levied upon a lot of land as the property of Harrison, but which was standing in Mrs. Harrison's name. And in pursuance of a certain other execution in favor of one David Glass and against said George W. Harrison, Glass levied upon the same property. The property was afterwards sold under these executions, Snell and Glass becoming joint purchasers thereof. It seems that prior to the Snell & Glass judgments, there was another judgment rendered against Harrison, under which an execution issued, and one J. H. Warren became the purchaser of the same property, and shortly afterward made a quit-claim deed thereof to Mrs. Harrison. When Snell and Glass bought in the property at their execution sale, they began suit against the Harrisons to set aside and annul this conveyance to Mrs. Harrison as being fraudulent, and were successful in the suit. After Snell and Glass had obtained their judgments, Harrison, as his wife's agent, made an agreement with Wells, whereby Wells, in consideration of Harrison delivering back to him the indemnity notes and agreeing to contest the suit against him and his wife, "through all of the courts," agreed to reimburse

Mrs. Harrison to the amount of the notes for any loss she might sustain by reason of the suit. This agreement is the foundation of the claim presented to the probate court and now before us on appeal, Mrs. Harrison contending that, by reason of the Snell and Glass judgment annulling her title to the property, she has been damaged, and a cause of action has arisen in her favor under the agreement with Wells.

Treating the agreement as having been made by Mrs. Harrison, and the consideration as having moved from her, it amounts to this, that she agrees, for a consideration, to attempt to carry out and to consummate a fraud upon Snell and Glass by endeavoring to cover her husband's property which was liable to their claims. This I believe to be a contract which ought not to be enforced. Though it be the law that a subsequent independent contract, founded on a new consideration, is not contaminated by the illegal act, although such illegal act was known to the contractor, this is always understood with the proviso, that the contractor had no interest or part in the illegal transaction and took no part in the scheme to carry it out. Thus in the case of *Armstrong v. Toler*, 11 Wheat. 258, Armstrong, during the war of 1812, imported goods into this country from New Brunswick, and consigned them to Toler, who, upon their being seized and libelled as having been imported contrary to law, became liable for their appraised value, and the goods were delivered to Armstrong on his promise to pay Toler any sum for which he might be liable should the goods be condemned. The goods having been condemned, Toler paid their appraised value and brought his action to recover the amount from Armstrong, who resisted the demand on the principle that the contract was void as having been made upon an illegal consideration. Chief-Justice MARSHALL held that Toler could recover, giving several illustrations of the principle which has been invoked by both parties to this controversy. It is true that a charge of the trial court, in that case, was approved by Justice MARSHALL in which the following general language was

used, that, "if the promise be unconnected with the illegal act, and is founded on a new consideration, it is not tainted by the act, although it was known to the party to whom the promise was made, *and although he was the contriver and conductor of the illegal act.*" The charge continues with an illustration, showing that the words which I have italicised were not intended to convey the meaning they would have conveyed but for the illustration. The illustration is this, that, "if A. should, during the war, contrive a plan for importing goods from the country of the enemy on his own account, by means of smuggling, or of a collusive capture, and goods should be sent in the same vessel for B.; and A. should, upon the request of B., become surety for the payment of the duties, or should undertake to become answerable for the expenses on account of a prosecution for illegal importation, or should advance money to B. to enable him to pay those expenses,—these acts constituting no part of the original scheme, here would be a new contract upon a valid and legal consideration, unconnected with the original act, although remotely caused by it, and such contract would not be so contaminated by the turpitude of the offensive act, as to turn A. out of court when seeking to enforce it, although the original introduction into the country was in consequence of the scheme projected by A. in relation to his own goods."

The chief justice says of this illustration, that it "does not suppose A. to be concerned or in any manner instrumental in prompting the illegal importation of B., but to have been merely engaged in a similar illegal transaction, and to have devised the plan for himself, which B. afterwards adopted. The illustration explains what was meant by the general words previously used, which, unexplained, would have been exceptionable." It is emphasized and distinctly held in that case that if Toler had had any interest in Armstrong's goods, or was the contriver of, or concerned in the scheme to introduce

them into this country, or consented to become the consignee, with a view to their introduction, he could not recover. So in the case of *Buckingham v. Fitch*, 18 Mo. App. 91, the plaintiff not only paid a loss sustained by defendant in an immoral transaction, but he conducted and managed the scheme himself, and so identified himself with the original wrong as to become a direct participant therein. In other words he committed the wrong himself.

Having in view the distinction as made in these cases, how do we find the case at bar? It will no doubt be conceded that it was illegal and wrongful for Harrison to attempt to withdraw his property from the satisfaction of his debts by covering it with his wife's name. That it was accomplished by an indirect method does not alter the matter. That this fraudulent purpose was in fact conceived and attempted, was determined by the result of the suit against Harrison and this plaintiff. In defending that suit the defendants were engaged in an endeavor to effectuate their fraudulent purpose. There can be no doubt from the evidence in this cause that the Harrisons and Wells were all directly engaged in this purpose. Mrs. Harrison was not only part and parcel of the affair, but she was to be the principal beneficiary in case of success. The agreement may be put in this form: In consideration of a re-delivery of the notes, Wells agreed to reimburse Mrs. Harrison for any loss she might sustain if she failed in her attempt to defraud Snell and Glass, provided she was diligent in her effort and persisted in it through "all the courts." The contract here was not "unconnected with this illegal act," but was made with a view of aiding and effectuating it.

That plaintiff cannot recover in this action may be made to appear in another way. It is an undisputed principle, that an action will not lie to recover a demand, if to establish it, the plaintiff requires aid from an illegal transaction, or is under the necessity of showing and depending upon an illegal agreement to which he had been a party. *Welch v. Wesson*, 6 Gray, 505.

Now, in this case, to maintain herself, plaintiff must show and did prove in the trial court that Snell and Glass brought their bill in equity to set aside and annul her conveyance, as being made and held by her in fraud, and that she resisted such action, that the court sustained the charge of fraud and for that reason set aside the deed and annulled her title to the land. She proved, therefore, and was compelled to prove, in order to make out her case under the agreement, that she was a party to a wrongful and illegal transaction.

The judgment, with the concurrence of the other judges, is reversed.