JAMES A. CARSON, Defendant in Error, *v.* W. A. HUNTER, Plaintiff in Error.

1. *Contracts — Lex fori governs questions affecting the remedy.*—The *lex fori* decides all questions which pertain to the remedy only, and not to the contract.
2. *Limitation — Acts of, not expressly discharging debt, go to remedy merely.* —Acts of limitation, unless they expressly discharge a debt, go to the remedy merely, and none can be pleaded except those in force where the suit is brought.
3. *Limitations, statute of — Removal from one State to another — Revival of contract.*— A debt barred by the statute of one State, but not by that of another, may be revived by the removal of the debtor from the former to the latter, between the periods of limitation; and an act which provides that suit on a given class of contracts shall be brought within a certain period, " and not after," does not extinguish the contract after that period, so as to prevent such a revival.
4. *Bills and notes — Proclamation of August, 1861 — Note given for slaves taken to States in insurrection, without consideration.*— A note given for the purchase of negroes taken into the States in insurrection, without special license, during the late war, and after the proclamation of the President, of August 16, 1861, had no legal consideration and could not be collected.

*Error to Second District Court.*

*Van Alen & Reefe,* for plaintiff in error.

I. The statute (Rev. Stat. Arkansas, 527) works a discharge of the note everywhere. Whatever constitutes a good defense by the law of the place where the contract is made or is to be performed, is equally good in every other place where the question may be litigated. (2 Kent's Com. 574, 7th ed. ; Goodman v. Monks, 8 Post, Ala., 84 ; Gordon v. Preston, Wright, Ohio, 341 ; Horton v. Hosmer, 16 Ohio, 145 ; Davis v. Minor, 1 How., Miss., 183 ; Baker v. Stonebreaker, 36 Mo. 338 ; Stephens v. St. Louis National Bank, 43 Mo. 335 ; Const. U. S., art. IV, § 1.) The statute of Arkansas differs from that of Missouri and most of the other States in this : that it bars all remedy after five years ; *i. e.,* actions shall be brought within five years, " and not after." All the remedy being barred by the *lex loci contractus,* there is a virtual extinction of the right in Arkansas, which ought to be recognized in every other tribunal as of equal validity. (Le Roy v. Crowninshield, 2 Mason's C. C. 151; Goodman v. Monks, *supra,* and cases cited.)

II. The facts set up in the answer show most clearly a contract founded upon a breach of law, contrary to public policy, and there was, therefore, no valid consideration for the note in suit. (Griswold v. Waddington, 16 Johns. 486; Peltz v. Long, 40 Mo. 532.)

*Perryman & Dinning*, for defendant in error.

I. The statute of limitations of Arkansas simply affects the remedy, and does not extinguish the debt. (Baker v. Stonebreaker, 36 Mo. 338; Nash v. Tupper, 1 Cains, N. Y., 402; Ruggles v. Keeler, 3 Johns. Ch., N.Y., 263; Sto. Confl. Laws, 935, § 556; McElmoyle v. Cohen, 13 Pet. 312; 2 Kent, 11th ed., 599–601; Carpenter v. Wells, 21 Barb., N. Y., 593; Wood *et al.* v. Watkins *et al.*, 17 Conn. 500; Broadhead v. Noyes, 9 Mo. 55; Dorsey v. Hardesty, *id.* 157; Minor v. Cardwell, 37 Mo. 350; Labadie v. Chouteau, *id.* 413; Decouche v. Savetier, 3 Johns. Ch. N. Y., 217; 4 Cow. 528, note and cases there cited.)

II. The answer of defendant did not disclose any legal defense to plaintiff's cause of action. The consideration for the note was good. (Phillips v. Evans, 38 Mo. 305.) Under the law of Missouri, the consideration for the note is good, and this court will presume the laws of Arkansas to be the same as ours. (Milly v. Smith, 2 Mo. 36; Charlotte v. Chouteau, 25 Mo. 465.)

BLISS, Judge, delivered the opinion of the court.

The plaintiff brought his action upon a promissory note given him by defendant at Pocahontas, Arkansas, November 12, 1861, to which the maker sets up two defenses: first, the statute of limitations of Arkansas; second, illegality of consideration.

This suit was brought in Missouri, and we have nothing to do with the Arkansas act of limitation. The *lex fori* decides all questions pertaining to the remedy, and the statute given in evidence does not vary substantially from our own, except that the time is fixed at five instead of ten years. It is too well settled now to admit of question, that acts of limitation, unless they expressly discharge the debt, go to the remedy merely, and that

none can be pleaded except those in force where the suit is brought. (King v. Lane, 7 Mo. 241; Sto. Confl. Laws, § 577 *et seq.*, and all the authorities.)

It is claimed, and not without show of reason, that where, as in the case at bar, the term fixed by the statute had already expired before the pleader left the State in which the contract was made, it should be deemed to have been discharged, and that it can not be revived by removal to another State. Judge Story considers this point at length in Le Roy v. Crowninshield, 2 Mason, 151, and thinks the position founded in reason, although in deference to authority he decides against it. In Bulger v. Roach, 11 Pick. 36, the question came before the Supreme Court of Massachusetts, and the court denied the force of the distinction involved in it, and held that the general doctrine applied to " a case where both parties were subject to the jurisdiction of a foreign State, when the bar arising from its statutes of limitation attached." Justice Shaw gives as a reason for making no distinction between cases where the statutory period had elapsed when the party left the foreign jurisdiction, and where it was still running, the fact that the time having begun to run would continue until completed, notwithstanding the parties might leave the jurisdiction. This is a good reason, though somewhat technical; but a better one, it seems to me, is suggested by the policy that dictates, and by the character of, acts of limitation. They are properly called statutes of repose. The State fulfills its duty to the citizen if a reasonable time is given to apply for the redress of wrongs. More than that encourages strife, by reviving controversies that had been suffered to sleep, and reviving them, too, after it may have become difficult to understand their true character. Each State must necessarily decide for itself what time is reasonable.

It is sometimes said that these acts raise an imperative presumption of payment or satisfaction; and if this were their theory, and if this presumption once attached, I do not see how it could be avoided by a change of domicile; and besides, it would seem in such case that the limitation could be shown in support of a plea of payment, etc. But when we consider these acts as

declarations of the law-making power, fixing the period of time in which courts shall be open for the redress of grievances, it seems perfectly clear that the term prescribed by one State has no control whatever over that which may be fixed by another. If the State of Arkansas says that it will furnish and support tribunals to litigate claims growing out of bills and notes, five years and no more after the cause of action has accrued, it is no reason why Missouri may not determine upon a longer or shorter period. These acts of limitation do not assume that in a certain period liabilities will have been satisfied in fact, but they fix a reasonable period in which the law will aid parties in enforcing satisfaction; and if Missouri grants a longer time than Arkansas, it does not thereby revive a satisfied claim, but simply gives claimants greater opportunities to compel a debtor to do what he should have done without compulsion. This theory in regard to limitations to actions upon contracts was adopted by this court in Stephens v. The St. Louis National Bank, 43 Mo. 385, and effectually repels the idea that payment is to be presumed from the lapse of the period provided in the Arkansas statutes.

We are referred by counsel to Baker v. Stonebreaker, 36 Mo. 338, in which a certain act in force in Maryland was held not to be a mere act of limitation, but that it absolutely extinguished the cause of action. "The doctrine is well established," says the court, "that when an act of this kind operated to extinguish the contract or debt itself, the case no longer falls within the law of limitations on the remedy merely. In such case, when the debt or judgment is sued on in another State, the *lex loci contractus*, and not the *lex fori*, is to govern." But the limitation pleaded in the case at bar is not an abrogation or extinguishment of the contract. It provides that suits shall be brought within a certain period, "and not after"—the latter phrase not varying, though making a little more emphatic, the general provision.

The second defense sets out, though imperfectly, an insufficient consideration, inasmuch as the note was given for slaves taken by the plaintiff from Missouri to Arkansas during the war, and sold to defendant. Congress, by the act of July 13, 1861,

authorized the president to declare any State or part thereof to be in a state of insurrection, and forbade all commercial intercourse between the same and their citizens and the citizens of the rest of the United States. Under this act the president of the United States, on the 16th of August, 1861, declared certain States, including Arkansas, to be in insurrection, and from that period all trade between citizens of Missouri and those of Arkansas became unlawful unless by special license. If the plaintiff, after that time, took negroes, or anything else which was the subject of barter and sale, into Arkansas and sold them, and received the note now in suit in payment, the transaction was in violation of law, and the note can not be collected.

The Supreme Court of the United States, in The Ouachita Cotton, 6 Wall. 521, considered the effect of this act and proclamation, and pronounced the various purchases then under consideration, and made in contravention of them, to have been unlawful, and operating no transfer of property; and in The Reform, 3 Wall. 632, and The Sea Lion, 5 Wall. 647, special license from the president was held essential to validate such trade.

This disability would necessarily spring from the fact of war, for the absolute prohibition of commercial intercourse between subjects of belligerent States, without license from the sovereign power, is one of its incidents. Says Kent, in Griswold v. Waddington, 1 Johns. 483: "The law has put the sting of disability into every kind of voluntary communication and contact with an enemy, which is made without the special permission of the government." Wheaton, in his Elements of International Law, on pages 391-92, considers the subject at some length, and by various citations from English and continental as well as American authorities, shows the rule prohibiting commercial intercourse without license, between citizens or subjects of hostile States, to be universal and inflexible. Applying it to contracts, in section 15, p. 392, he says: "It follows, as a corollary from the principle interdicting all commercial and other pacific intercourse with the public enemy, that every species of private contract made with his subjects during the war is unlawful. The rule

thus declared is applicable to insurance on an enemy's property and trade; to the drawing and negotiating of bills of exchange between the subjects of the powers at war; to the remission of funds in money or bills to the enemy's country," etc.

During the late civil war many slaves were taken to the States in insurrection, and their whole labor became thereby directed to the creation of such supplies as alone could enable the enemy to keep the field. To hold such intercourse lawful, and enforce contracts made in prosecuting it, would suppose that government could sanction its own destruction, and would present the spectacle of a country lawfully fighting those whom its subjects were lawfully feeding. The law tolerates no such absurdity.

The record shows that the Circuit Court must have held that the note in suit was barred by the Arkansas statute of limitations, and for that reason the District Court did right in reversing its judgment. It does not appear that the facts involved in the other defense were passed upon, and until that was done, the District Court should not have rendered judgment upon the demand. Its judgment of reversal is affirmed, but that rendered upon the note is reversed and the cause remanded to the Circuit Court for a new trial, with leave to amend the answer. The other judges concur.