THE SEDALIA, WARSAW & SOUTHERN RAILWAY COM-PANY, Appellant, v. MARTHA E. SMITH, Respondent.

Kansas City Court of Appeals, October 24, 1837.

1. CONTRACT OF GUARANTY—PRINCIPLES OF LAW APPLICABLE TO—DEFINITION OF SUCH CONTRACT.—Wherever there is no principal there is no guarantor, and whatever entirely avoids the obligation of the principal releases the guarantor. A guarantor may not interpose those exceptions which are personal to the principal, but he has the right to interpose all which are inherent to the debt. Brandt on Suretyship and Guaranty, section 121. A guaranty is a collateral engagement for another, as distinguished from an original and direct engagement for the party's own act. But the guarantor may, by the terms of his contract, make himself liable for the principal debt, although it be invalid.

2. —— —— CASE ADJUDGED.—The contract in this case is clearly a contract of guaranty. It was to make good, to a certain amount, any deficit in the payment of certain subscriptions to the capital stock of the plaintiff. It was not that the subscriptions had been made, or that they were valid, or even that they would be paid in full, but that a certain amount of the subscriptions would be paid, and if not, the deficit would be paid in a certain manner. *Held,*

that the guaranty was binding as to the valid subscriptions only, having been based upon the assumption that the subscriptions had been made, and that they were valid.

APPEAL from Pettis Circuit Court, HON. JOHN P. STROTHER, Judge.

*Affirmed.*

Statement of case by the court.

This was an action on a written contract against the defendant as one of sixty-two parties who had executed it. The contract was as follows:

"Sedalia, Mo., September 29, 1879.

"We, the undersigned, hereby guarantee to the Sedalia, Warsaw & Southern Railway Company that the sum of fifty-five thousand dollars shall be paid to said company out of the subscriptions to the stock of said company, made in Pettis county, and agree that we will severally pay to said company our *pro-rata* part of any deficit that may be found to exist in such payments of said subscription; provided, that no subscriber hereto shall in any event be liable hereon for a greater sum than one hundred dollars ($100.00); and, provided further, that this obligation shall not be enforced until ninety days after the railroad of said company is built and in operation to the southern line of Pettis county, at which time the amount of the deficiency shall be ascertained and then be divided *pro rata* among and paid by the subscribers hereto."

Most of the so-called subscriptions to the capital stock of the plaintiff were, in an action brought by plaintiff against one of the so-called subscribers to recover his subscription, held to be invalid, and the subscriber was held to be not liable on such subscription. *Railroad v. Wilkerson,* 83 Mo. 235.

This case was tried by the court sitting as a jury. The court clearly found in accordance with the seventh

declaration of law given for the defendant.   That declaration of law was as follows :

"7.   Although the court may find under the other instructions that there was a sufficient consideration for said contract of guarantee, yet the court declares the law to be that none of the alleged subscriptions to the capital stock of the plaintiff were binding on the parties making such subscriptions except those made on the articles of association, and the only liability of the defendant would be 1-62 of $1,000.00 (that being the amount admitted to be unpaid on the articles of association), with six per cent. interest from the commencement of this suit."

As the court's finding was made in accordance with the law as declared in said declaration of law, the only question for our determination is the correctness of that declaration of law.   We need not notice the other questions presented in the record.

W. S. SHIRK and DRAFFEN & WILLIAMS, for the appellant.

I.   It is immaterial to this case whether the original subscriptions to the capital stock of the plaintiff corporation were valid or invalid.   The guaranty sued upon was a separate and independent undertaking.   It is no defence that the subscriptions guaranteed were not obligatory upon the parties who signed them ; the defendant had the right to guarantee their payment notwithstanding.   The court, therefore, erred in giving defendant's instruction on this point and refusing that asked by plaintiff.   *Jones v. Thayer*, 12 Gray [Mass.] 443; *Veasy v. Willis*, 6 Gray [Mass.] 90; *Mason v. Nichols*, 22 Wis. 360; *Remsen v. Graves*, 41 N. Y. 471; *Mann v. Eckford's Executors*, 15 Wendell [N. Y.] 502; *McLaughlin v. McGovern*, 34 Barbour [N. Y.] 208; *Kimball v. Newell*, 7 Hill [N. Y.] 117.

II.   The court erred in giving defendant's second instruction.   The fact that plaintiff company was organ-

ized to build the railroad at the time the guaranty sued upon was made, or even that, in the absence of such agreement, the road would have been built, will not defeat an action upon defendant's promise upon the ground that it was without consideration. *Stevens v. Corbitt*, 33 Mich. 458.

III.   If there was a sufficient consideration for the guaranty as an independent agreement between its signers and the plaintiff company, then the only remaining defence is that the defendant's agent was induced to sign the agreement through the fraud or false representations of the plaintiff or its agents.   No actual fraud is claimed.   No representations of any kind were, in fact, made, as is testified by Mr. Wilkerson.   The paper was presented to him by J. H. Bothwell, Esq.   The record does not show that he had any connection with, or was acting for, the company, and we understand that as a matter of fact he was not.   It is not pretended that any information was withheld from Mr. Wilkerson that if he had known would have caused him to act differently. He says he was as anxious for the road as any one, and frankly states, that when he signed the paper, he expected his principal would have to pay the amount specified therein.   The fraud, upon which it is sought to avoid this contract, is simply that the plaintiff company failed to disclose the date of its incorporation, when no such information was asked, and in the absence of any evidence that the plaintiff's officers or agents knew that the defendant or her agent was in ignorance as to the matter, and was relying upon it for advice in that behalf, and that, too, when the date of its incorporation was a matter of public record, surely there was no fraud, actual or constructive, in this that would avoid the contract.

IV.   In the case at bar the plaintiff was induced to undertake the building of the railroad by the guaranty sued upon.   The defendant, a large property owner of the city of Sedalia, believed that it would be of great

benefit to said city and would enhance the value of her property. The road was built and she has derived all the advantages arising from its construction. Her agent says that he expected, when she signed it, that she would have it to pay. She was willing to do it to secure the road. Upon the faith of her contract the plaintiff company has done all that was required of it. The defendant has reaped all the advantages that resulted from the plaintiff's performance of its agreement. Instead of its operating as a fraud upon defendant to compel payment of the sum due, it would be an injustice upon plaintiff, after having complied with its agreement, for the defendant to escape hers upon the objection urged in this case.

V. The defendant's ninth instruction was erroneous. (*a*) An instruction should not be given in the absence of evidence upon which to predicate it. (*b*) There was no evidence that any officer or agent of the plaintiff corporation solicited the defendant, or her agent, to sign said guaranty. Upon the contrary, the evidence shows that the soliciting was done by the citizens of Sedalia, under the belief that this was essential to secure the road, which was regarded as of great importance to the property owners of said city. (*c*) The instruction omitted an important element. In the absence of any request for information about the date of the incorporation of the plaintiff (which was a matter of public record, and could have been easily ascertained), certainly the defendant cannot avoid her contract for the failure of plaintiff to give such information unsought, unless its officers and agents at least knew that defendant was ignorant as to the matter, and was relying upon plaintiff. *Gillett v. Bank*, 56 Mo. 306; *Morrison's Administrator v. Ins. Co.*, 18 Mo. 262; 2 Pomeroy's Eq. Jur., sect. 902.

VI. The only way in which this court can determine the theory of the trial court is by an examination of the instructions given and refused. If the action of

the court in this particular was erroneous, it is immate-
rial that the trial was by the court without a jury.   *Lee
v. Porter*, 18 Mo. App. 377.   The defendant's agent,
according to his own testimony, expected to have to
pay the amount of the guaranty.   The road was built
in reliance upon the agreement, and defendant has had
the benefit of a performance by plaintiff, and should
not now be permitted to escape liability upon such in-
equitable ground.

JOHN MONTGOMERY, JR., and B. G. WILKERSON, for
the respondent.

I.   None of the alleged subscriptions were binding
on the parties making such subscriptions, except those
made on the articles of association, and the court so
properly declared the law in instruction number seven,
given at the instance of the defendant.   Rev. Stat., sect.
764; *Railroad v. Wilkerson*, 83 Mo. 235.

II.   The contract sued on is a guaranty; that is
a collateral undertaking, and not a separate and inde-
pendent undertaking, as appellant's counsel contend.
"A guaranty is an undertaking for another's liability
and collateral thereto.   A collateral undertaking to pay
the debt of another in case he does not pay it."   The
language of this contract, the context, and the attend-
ant facts, all show conclusively that this contract comes
fully and exactly within the definition of a guaranty.
Bouvier's Law Dict., title, Guaranty; Brandt on Surety-
ship and Guaranty, sect. 1; Chitty on Contracts, 499;
*Dole v. Young*, 24 Pick. 250; *Norris v. Spencer*, 18 Me.
324; Fell's Law of Guaranty and Suretyship, 1.

III.   The alleged subscriptions, other than those
on the articles of association, not being binding on the
parties making such subscriptions, the defendant, as
guarantor, cannot be held on her collateral undertaking
to pay the same, or any part thereof, and the circuit
court did not err in giving instruction number seven for
the defendant, and refusing the third instruction asked

by the plaintiff. Brandt on Suretyship and Guaranty, sect. 121; Chitty on Contracts, 499; *Ferry v. Burchard,* 21 Conn. 597; *Swift v. Beerss,* 3 Denio, 70; *Farmers' & Mechanics' Bank v. Kingsley,* 2 Doug. [Mich.] 281; *Ames v. Maclay,* 14 Ia. 281; *Smith v. Dickinson,* 25 Tenn. [6 Humph.] 261; *Jarrett v. Martin,* 70 N. C. 459; *Evans v. Roper,* 74 N. C. 639; *Joslyn v. Dow,* 19 Hun, 494; *Rumball v. Sewell,* 7 Hill, 117. This rule, as well as some of the exceptions noted in the next point, is distinctly recognized in the following Missouri cases: *Baker v. Kennett,* 54 Mo. 82; *Weed Sewing Machine Co. v. Maxwell,* 63 Mo. 486; *Lobaugh v. Thompson,* 74 Mo. 600.

IV. The guarantor is not bound unless the contract guarantee is binding on the principal. There are exceptions to this rule, as where the invalidity of the contract is not on account of some inherent vice in the contract itself, but for reasons that are personal to the principal, in the nature of privilege or protection, such as infancy or coverture. Brandt on Suretyship and Guaranty, sections 121 and 128; *Baker v. Kennett,* 54 Mo. 82; *Sewing Machine Co. v. Maxwell,* 63 Mo. 486; *Lobaugh v. Thompson,* 74 Mo. 600. There seem to be, also, some exceptions to this rule in the matter of the use of the word guaranty in reference to promissory notes. *Perry v. Barrett,* 18 Mo. 140; *Wright v. Dyer,* 48 Mo. 525. The cases cited for appellant come within these exceptions.

V. As to the question of "fraud" and "consideration," discussed by appellant, these are out of the case, for, if the court was right in the seventh instruction (and which involves the point above made, and that by appellant's counsel in his first point), then this court must affirm the judgment, whether the court erred in other respects or not.

HALL, J.—The general rule is, wherever there is no principal there is no guarantor, and that, whatever entirely avoids the obligation of the principal, releases

the guarantor. Brandt on Suretyship and Guaranty, sect. 121. Under this rule a guarantor may not interpose those exceptions which are personal to the principal, but he has the right to interpose all which are inherent to the debt. *Id.*, and cases cited. This rule results from the form of the contract of guaranty, which "is a collateral engagement for another, as distinguished from an original and direct engagement for the party's own act." Chitty on Cont. 499. We have no doubt, however, on reason as well as authority, but that the guarantor may, by the terms of his contract, make himself liable for the principal debt, although it be invalid. *Mason v. Nichols*, 22 Wis. 360; *McLaughlin v. McGovern*, 34 Barb. 208; *Veasey v. Willis*, 6 Gray, 90. Whether the guarantor has made himself thus liable must depend upon the proper construction of the contract, and the intention of the parties thereby ascertained. The contract in this case is clearly a contract of guaranty. The contract is to be construed, on the one hand, so as to give effect to the intention of the parties as it is to be gathered from the instrument (*Allen v. Savings Bank*, 4 Mo. App. 66), and, on the other hand, so strictly as not to extend the meaning of the terms used in the guaranty, or to amplify such meaning, so as to increase the extent of the obligation. *Eddy & Co. v. Sturgeon*, 15 Mo. 203. The obligation assumed by the terms of the guaranty in this case was to make good to a certain amount any deficit in the payment of certain subscriptions to the capital stock of plaintiff. The guaranty was not that the subscriptions had been made, that they were valid, or even that they would be paid in full. The guaranty was that a certain amount of the subscriptions would be paid, and, that if such amount was not paid, the deficit would be paid in a certain manner. The guaranty was based upon the assumption that the subscriptions had been made, and that they were valid. If no such subscriptions had been actually made, the guaranty would have created no liability. This is plain. The

guaranty that a certain amount of the money subscribed should be paid could not be extended so as to include a guaranty that the money was, in fact, subscribed. It is equally plain that the guaranty cannot be so extended as to exclude a guaranty that the money was validly subscribed. The term, "subscription," means valid subscriptions. To so extend the guaranty would be to make a new guaranty, and to impose a liability upon the guarantors not assumed by them. They guaranteed that a certain amount of the money validly subscribed would be paid, not that any money which was not subscribed would be paid.

The court held that the guaranty was binding as to the valid subscriptions only, and in so holding the court was correct. Judgment affirmed. Ellison, J., concurs; Philips, P. J., not sitting.