J. L. WOOLFOLK, Respondent, v. A. T. DUNCAN. Appellant.

Kansas City Court of Appeals, May 8, 1899.

1. **Promissory Notes:** GAMBLING CONSIDERATION: INDIVISIBLE TRANSACTION. The evidence relating to the settlement of a bet on a political election and the giving of a note, are reviewed and the transaction is held to be single and indivisible and the consideration for the note a gambling debt under the statute, and the note, therefore, void.

2. **Action:** GAMBLING: PUBLIC POLICY: NEW CONTRACT. No action lies upon an unlawful consideration and a contract growing out of an illegal or immoral transaction, though it be in fact a new contract, is tainted and there is no distinction between an immoral contract and one prohibited by law.

*Appeal from the Henry Circuit Court.*—HON. J. H. LAY, Judge.

REVERSED.

P. M. KISTLER for appellant.

(1)   A note given for money won at a bet or wager on any election authorized by the constitution and laws of this state is void under sections 5211 and 5215, Revised Statutes of 1889.   The bets admitted to have been made by the parties in this cause, come within the inhibition of section 5215, Revised Statutes 1889.   Ryan v. Judy, 7 Mo. App. 75; Bick v. Seal, 45 Mo. App. 475.   (2)   When the contract grows immediately out of and is connected with an illegal or immoral act, a court of justice will not lend its aid to enforce it, and if the contract be in fact only connected with the illegal or immoral transaction and growing immediately out of it, though it be in fact a new contract, it is equally tainted by it. Armstrong v. Toler, 11 Wheaton (U. S.) 279; Buckingham v. Fitch, 18 Mo. App. 91; Hayden v. Little, 35 Mo. 422.   (3) The intention of the parties respecting this matter is to be gathered, not altogether from their assertions and statements, but also from the attending circumstances surrounding the transaction, resulting in the giving of the note in suit.   Hill v. Johnson, 38 Mo. App. 383.   (4)   If the consideration for the note in suit was illegal in whole or in part, this defeats the entire contract, and it is immaterial whether such illegality is disclosed by the contract or is established by evidence *aliunde;* and if any part of the debt evidenced by the note in suit is invalid by reason of illegality in its consideration, it is not made valid by reason of a new promise of payment. Bick v. Seal, 45 Mo. App. 475; Comings v. Leedy, 114 Mo. 454.

Woolfolk v. Duncan.

I. C. DUCKWORTH and E. C. MUNSON for respondent.

(1) Instructions numbered 1 and 2, given by the court, are clear and concise declarations of law, and their soundness can not be successfully assailed. (2) Questions of fact will not be inquired into by this court unless unsupported by evidence. Dredging Co. v. Crown Coal & Tow Co., 77 Mo. App. 362. (3) This case was submitted to the court sitting as a jury. The facts were passed upon by the trial court, and they are, therefore, incontrovertible here. Smith v. Zimmerman, 51 Mo. App. 519; Swayze v. Bride, 34 Mo. App. 414; Gaines v. Fender, 82 Mo. 509; Hamilton v. Boggess, 63 Mo. 233.

SMITH, P. J.—This is an action which was brought on a promissory note for $125. The defendant, by his answer, interposed the defense that the said note "was given for money won at a bet or wager on an election authorized by the constitution and laws of this state," and was therefore "wholly without consideration and void," etc.

The cause was tried by the court without the aid of a jury. It appears from the undisputed evidence that the plaintiff and defendant made two bets on the result of the presidental election which took place in 1896. The plaintiff bet with defendant $75 against $50 that Mr. McKinley would be elected president, and defendant bet with plaintiff $50 against $75 that Mr. Bryan would be elected president. Plaintiff made his check for $75 and defendant made his note for $50, both of which were placed in the hands of Mr. Hammond as stakeholder.

STATEMENT.

The plaintiff made a further like bet with the defendant of $100 against $75 and defendant made a further like bet with plaintiff of $75 against $100, the plaintiff making his check for the $100 so bet and the defendant producing $75 in cash, both of which were placed in the hands of said stake-

holder.    It further appears that after the election had taken place the parties to the bets including the stakeholder met at the store of Hammond Brothers, where it was conceded by the defendant that the plaintiff had won.    It is not disputed, in the same connection, that plaintiff drew his check for $75 which was delivered by him to the stakeholder, who delivered over the same with the $50 note to defendant, and that the defendant made his note to plaintiff for $125.

The plaintiff contends that this was a transaction independent and distinct from that of the settlement of the bets, while on the other hand, the defendant's contention is that the settlement of the bets and the giving of his $125 note for the $75 in cash and the $50 note, the latter being returned to him by the stakeholder at the instance of the plaintiff, were all embraced in a single transaction.    Defendant testified "that after the election we met at Mr. Hammond's store for settlement. I proposed to Mr. Woolfolk my seventy-five dollars in cash and my note for fifty dollars be returned to me and in the place of them I would put the whole thing in one note of one hundred and twenty-five dollars.    I needed some money at the time.    He consented.    I told him I would go to my room and make out the note which I did.    I was rooming over the store just up stairs, and when I came back Mr. Hammond and Mr. Wool-folk were at Mr. Hammond's desk and Mr. Woolfolk had just finished writing the check when I got there for seventy-five dollars, he passed it along the desk to Mr. Hammond and Mr. Hammond picked it up with my fifty dollar note and handed them to me, and I at the same time handed to Mr. Hammond or laid on the desk the one hundred and twenty-five dollar note."    Defendant's testimony was corroborated by that of the stakeholder, the latter testifying:    "After the election on the morning of November 6th, 1896, J. L. Woolfolk and A. T. Duncan met at Hammond Brothers store in Clinton, Missouri, it being understood between plaintiff and defendant that they would settle at that time, and defendant made proposal that

Woolfolk v. Duncan.

his fifty dollar note and his seventy-five dollars cash be given back to him for which he would give his promissory note for one hundred and twenty-five dollars, which was agreed upon by plaintiff and defendant made his note for that amount and A. T. Duncan handed the note to me and I handed it to plaintiff and then plaintiff handed me a check for seventy-five dollars and I gave plaintiff a check for his money."

The plaintiff in rebuttal testified that when he and defendant met to settle the bets the defendant said that he would like to keep the money as he was a little short, and that he (plaintiff) told defendant he would not do that but he would settle with him and make him a loan of $125; that thereupon defendant went off and brought back his note and he wrote two checks, one for $75 and another for $50 payable to bearer and turned them over to the stakeholder who gave him the defendant's note for the $125 and his (the stakeholder's) individual check for the stakes.

It does not appear that the $50 check was ever delivered to defendant, or that it had any connection with the transaction so far as defendant was concerned. It seems that the stakeholder for some reason not made clear by any evidence gave plaintiff a check for $300, just as if the stakes were all cash. It may be that the $50 check which was given by plaintiff to the stakeholder was to return to him the $50 which the latter had given the former in excess of the cash stakes. The stakes amounted in all to $300, of which $50 was the defendant's note. The plaintiff was only entitled to a check for $250 in cash which added to the note would have made the $300, but it seems the stakeholder gave him a check for $300. This $50 check must have been given to reimburse the stakeholder.

It thus appears that the transaction was but a single and indivisible one which was completed through the agency of

the stakeholder. He handed over the stakes to the plaintiff and the latter turned back to the former the $75 for defendant. The defendant handed the stakeholder his note for $125 which was turned over by the latter to plaintiff. The stakeholder thereupon turned over to the defendant the $75 in cash, or, which was the same thing, the plaintiff's check therefor, and his $50 note.

PROMISSORY notes: gambling consideration; indivisible transaction.

It is very clear to us that what was intended to be accomplished by the transaction was that the stakeholder, with plaintiff's consent, return to defendant his cash and note bets and accept in their place the defendant's note which is sued on. It is to be inferred that the stakeholder, in receiving the check and cash stakes of plaintiff and defendant, deposited the same in bank to his own credit, and this explains why the stakeholder gave his check for the stakes to plaintiff. As the plaintiff received a check for the entire amount of the stakes it was necessary then to complete the transaction, to give the stakeholder a check instead of the cash for the $75 he desired to have the latter return to defendant. We are unable to discover that the note in suit has any consideration for its support other than the $75 in cash and the $50 note which the plaintiff had won from the defendant on the said election bets. The ingenious effort of the plaintiff to so complete the said transaction with defendant as to conceal its true character can not succeed. A close scrutiny and analysis of the transaction has disclosed a taint that is fatal to the judgment. If the said note was given in exchange for defendant's check and $50 note then the consideration of the former is as unlawful as that of the latter. The statute of this state, sections 5211 and 5215, Revised Statutes, declare that when the consideration of any bill or note is for money or property won at any game or gambling device such bill or note shall be void and that bets and wagers on any election authorized by the con-

Woolfolk v. Duncan.

stitution and laws of the state are gaming within the meaning of chapter 73, Revised Statutes.

It is well settled that no action will lie upon any contract based upon any unlawful consideration, or which is repugnant to law or sound policy or good morals, *ex turpi contractu actio non oritur*. And it is equally well settled that if a contract grows immediately out of or is connected with an illegal or immoral act a court of justice will not enforce it. And if the contract in fact be only connected with the illegal or immoral transaction and growing out of it, though it be in fact a new contract, it is equally tainted. Hayden v. Little, 35 Mo. 418; Gwinn v. Simes, 61 Mo. 335; Sumner v. Summers, 54 Mo. 340; Kitchen v. Greenabaum, 61 Mo. 110; Buckingham v. Fitch, 18 Mo. App. 91; Bick v. Seal, 45 Mo. App. 475; Ryan v. Judy, 7 Mo. App. 75; Hill v. Johnson, 38 Mo. App. 383; Hatch v. Hanson, 46 Mo. App. 323. There is no distinction between a contract that is immoral in nature and tendency and therefore void as against public policy and one that is illegal and prohibited by law. Buckingham v. Fitch, *ante*.

*Margin note: ACTION: gambling; public policy: new contract.*

If the law is as we have just stated it to be, and of which there can be no question, then the said note is without consideration and void; and therefore the trial court erred in refusing to so declare when requested so to do by defendant.

The judgment should have been for defendant instead of for the plaintiff. It is accordingly reversed. All concur.