A. H. TANDY, Respondent, v.· ELMORE-COOPER
LIVE STOCK COMMISSION CO., Appellant.

Kansas City Court of Appeals, November 28, 1904, and May 8, 1905.

1. **CONTRACTS: U. S. Statute: Forbidden Action.** An act of
Congress makes it a misdemeanor to maintain a fence inclosing
more than one hundred and sixty acres of the public domain
and Missouri courts must recognize such statute the same as it
would a State statute; and all contracts connected with the per-
formance of an action forbidden by statute are void and unen-
forcible.

2. **BILLS AND NOTES: Guaranty: Public Domain: Cattle Graz-
ing.** Where the consideration of a note is for the grazing of
cattle on inclosed public domain no action can be maintained to
enforce the note or the guaranty thereof.

3. ———: **Consideration: Part Illegal.** When a part of a considera-
tion of a note is illegal and the bad cannot be separated from
the good, the whole consideration is illegal and no action will
lie.

4. ———: ———: **Lien: Duress: Instruction.** Certain instructions
set out in the opinion and relating to the lawfulness, and the
existence of an agister's lien in Oklahoma and duress in guar-
anteeing a certain note are approved as proper on the evidence
in the case.

#### On Rehearing.

5. **CONTRACTS: Consideration: Arbitration.** And an award
springing out of an illegal consideration stands on no higher
ground than the contract itself and is not purged of its illegality
by the award.

6. **BILLS AND NOTES: Illegal Consideration: Arbitration.** And a
note given for an award arising out of a contract based on an il-
legal consideration will not sustain an action.

Appeal from Jackson Circuit Court.—*Hon. James Gib-
son*, Judge.

REVERSED AND REMANDED.

*Haff & Michaels* and *L. W. McCandless* for appellant.

(1) The note and guaranty in said suit are void, because they were extorted by the plaintiff by means of a duress of goods. (2) The common law was in force in Oklahoma at the time of the execution of the note and guaranty in suit. Statutes of Oklahoma (1893), sec. 3874. And an agister's lien did not exist at the common law. Stone v. Kelley, 59 Mo. App. 214, 218; Pickett v. McCord 62 Mo. App. 467, 473; 2 A. and E. Encyc., Law (2 Ed), p. 12. (3) Even in those jurisdictions where the law allows an agister to have a lien on the animals which he keeps, as a security for his charges for feed and care, the agister's lien is subordinate to the lien of an antecedent chattel mortgage affecting the animals. Stone v. Kelley, 59 Mo. App. 214, 218, 221; Pickett v. McCord, 62 Mo. App. 467, 473; Lazarus v. Moran, 64 Mo. App. 239, 241; Miller v. Crabbe, 66 Mo. App. 660, 662; Harding v. Kelso, 91 Mo. App. 607, 610, 612. (4) A promise, by one entitled to the possession of personal property given to induce a surrender of the property by one unjustifiably withholding it, is extorted by duress of goods and is void. Claflin v. McDonough, 33 Mo. 412, 415; Fout v. Giraldin, 64 Mo. App. 165, 169; Wilkerson v. Hood, 65 Mo. App. 491, 494; Dustin v. Farrelly, 81 Mo. App. 380, 384; Flinn v. Bldg. Ass'n, 93 Mo. App. 444, 448. (5) All contracts requiring, or tending to encourage, or arising out of, or connected with, the performance of an act forbidden by the terms of a statute, which is designed to prevent altogether, and not merely to penalize for revenue, the doing of the act, are void and unenforceable. Boynton v. Curle, 4 Mo. 599; Downing v. Ringer, 7 Mo. 585, 586; Hayden v. Little, 35 Mo. 418, 422; Bank v. Young, 37 Mo. 398, 406; Peltz v. Long, 40 Mo. 532, 538; Carson v. Hunter, 46 Mo. 467, 471; Porter v. Jones, 52 Mo. 399, 403; Sumner v. Summers, 54 Mo. 340, 346; Gwinn v.

Simes 61 Mo. 335, 339; Ins. Co. v. Smith, 73 Mo. 368, 370; Buckingham v. Fitch, 18 Mo. App. 91, 99; Tyler v. Larimore, 19 Mo. App. 445, 454; Parsons v. Randolph, 21 Mo. App. 353, 359; Bick v. Seal, 45 Mo. App. 475, 479; Sprague v. Rooney, 104 Mo. 349, 358; Friend v. Porter, 50 Mo. App. 89, 92; Haggerty v. Mfg. Co., 143 Mo. 238, 246; Swing v. Cider & Vinegar Co., 77 Mo. App. 391, 394; Ehrhardt v. Robertson Bros., 78 Mo. App. 404, 408; Board of Trade v. Brady, 78 Mo. App. 585, 592; Woolfolk v. Duncan, 80 Mo. App. 421, 427; St. Louis Fair Ass'n v. Carmody, 151 Mo. 566, 573. (6) And a guarantor of an illegal contract may show the illegality of the principal agreement, in defense of a suit to charge him on his contract of guaranty. Sumner v. Summers, 54 Mo. 340; Heman v. Francisco, 12 Mo. App. 559; Wilkerson v. Hood, 65 Mo. App. 491; Kansas City v. O'Connor, 82 Mo. App. 655. (7) The statutes of the United States declare unlawul, make it a misdemeanor to erect or maintain, and provide for the summary destruction of the fence inclosing more than 160 acres of the public domain. 23 U. S. Stats. at Large, p. 321; 1 Supp. R. S. U. S. (2 Ed.), p. 477; Camfield v. United States, 59 Fed. 562; s. c., 66 Fed. (VIII. C. C. A.) 101; s. c., 167 U. S. 518, 525. (8) The courts of the State of Missouri are bound to, and will, give to the statutes of the United States the same recognition, force, and effect, accorded to the enactments of the Missouri legislature. Constitution of the United States, Art. VI; Peltz v. Long, 40 Mo. 532, 540; Carson v. Hunter, 46 Mo. 467, 471; Claflin v. Torlina, 56 Mo. 369, 371. (9) A promise to pay for keeping and caring for cattle is an unlawful promise, if the cattle are kept and cared for within a fence inclosing more than 160 acres of the public domain. Garst v. Love, 6 Okla. 46; Brown v. Finance Co., 31 Fed. 516, 519-520; Ruhe v. Buck, 124 Mo. 178, 183; Clothing Co. v. Sharpe, 83 Mo. App. 385, 391; Thompson v. Insurance Co., 169 Mo. 12, 29.

*T. A. Witten* for respondent.

(1) We shall not discuss the legal questions involved in this point because the whole matter will be determined upon the· facts. There was no duress. (2) We do not deem it necessary to discuss the issue raised in defendant's second point as to the legality of the consideration of the note or to review the many authorities there cited, because the note in question was given as the result of a compromise between plaintiff and Hudson in the adjustment of accounts amounting as claimed by plaintiff, to $2,100 and to a less amount as claimed by Hudson. As a result of this compromise the note in question for $900 was given and accepted in full settlement and satisfaction between the parties after a full discussion of all doubtful matters. Mullanphy v. Riley, 10 Mo. 489; Bailey v. Chouquette, 18 Mo. 220; Livingston v. Dugan, 20 Mo. 102; Rinehart v. Bills, 82 Mo. 534; Hill v. Coal & M. Co. 124 Mo. 153. Such a compromise is good even though it should turn out afterwards that one of the parties had no right in law. Bailey v. Chouquette, 18 Mo. 220. (3) The suit is upon a contract of guaranty and not upon the note. That plaintiff's agreement to grant Hudson an extension of time was a good consideration for the contract of guaranty by defendants, is no longer open to discussion in this state. Filley v. McHenry, 71 Mo. 417; Deer v. Marsden, 88 Mo. 512; Loewin v. Forsee, 137 Mo. 43; Crawford v. Spencer, 92 Mo. 509; Maddox v. Duncan, 143 Mo. 618; Edwards on Bills and Notes sec. 383; Tiedeman on Com. Paper. sec. 256 and cases there cited.

SMITH, P. J.—The facts out of which the action arose may be summarized in about this way: The plaintiff was in possession of a pasture in Woodward county, Oklahoma, containing about 240 sections of land which he had inclosed with a barbed wire fence. The title to all this land except about two-ninths was in the

United States—it being part of the public domain. In 1899 one Hudson, who was the owner of about two thousand head of cattle subject to a mortgage to the defendant, entered into a contract with plaintiff under which Hudson turned over to plaintiff the cattle to be by the latter kept in his pasture under the contract until about the 14th day of November, 1900. It seems that about this date defendant, the mortgagee, desired to take possession of the cattle under it mortgage but to this plaintiff objected unless his impoundage or pasturage charges were first paid. It appears that he claimed as due him on this account some $2,100. Included in this claim was a charge for feed furnished for the cattle while they were in the State of Texas. This account was disputed by defendant if not by Hudson. In view of these differences the defendant, plaintiff and Hudson agreed that a Mr. Mos should arbitrate the differences just referred to. Accordingly, as a common law arbitrator Mos heard and determined all the matters so in difference between them. The arbitrator cut down the plaintiff's claim to $900. The item therein for pasturage was eliminated, leaving only those for feed furnished by one Coombs and the wages which plaintiff had paid the cowboys for their services in keeping the cattle in the pasture. Hudson was utterly insolvent and after the amount he should pay plaintiff had been determined it was suggested by the arbitrator that Hudson give plaintiff his note for it; but to this plaintiff objected saying, "I cannot get a thing out of Nick Hudson: he has not got 15 cents." The arbitrator said, "let us go and see what Mr. Nations—the defendant's secretary and treasurer who was then on the ground where the cattle were—will do. Let us talk it over with him." Accordingly, they went to see Mr. Nations, who said: "I will tell you what we will do. If you will accept that note and give Mr. Hudson six months' time to pay it we will guarantee the payment." Plaintiff agreed to this and Mr. Nations, as secretary and treasurer of defendant com-

pany, wrote its name across the back of the note, after which it was delivered to the plaintiff.

The plaintiff himself testified that the defendant denied that it owed the pasture bill and insisted that it was a debt of Hudson's. He further testified that he refused to allow the cattle to be moved from the pasture until his claim was settled and until he got the note.

The defendant by its answer pleaded amongst other defenses that, "the only pasturage and feed furnished the said cattle of the said Hudson by the plaintiff for which the plaintiff claimed the said Hudson was so indebted to him as aforesaid, and to secure payment for which the aforesaid note executed by Hudson on the back, whereof the defendant's name was written, was given, was growing on the public lands of the United States Government in the Territory of Oklahoma; that plaintiff had no claim or color of title to, and no right to the exclusive possession of the said public lands which the defendant's cattle had depastured; that the plaintiff had wrongfully and unlawfully fenced, inclosed, and exclusively occupied and controlled the said public lands against the statute of the United States of America in such cases made and provided, to-wit: 'An Act to Prevent Unlawful Occupancy of Public Lands,' Chapter 149, U. S. Statutes at Large, Vol. XXIII, enacted February 25, 1885." And that by reason of the premises the said note executed by the said Hudson, on the back of which defendant's name appears, was given for an illegal and void consideration.

The answer further pleaded that the defendant as such mortgagee, together with the mortgagor, the said Hudson, went to take, and made demand for, possession of said cattle to ship them to market for sale; that the plaintiff, although he well knew that he had not himself as an agister, or otherwise, any valid claim to, or lien upon, the said cattle for pasturing them on the public domain as aforesaid, did, nevertheless, refuse to release and deliver over to the defendant and Hudson,

aforesaid, their own proper cattle unless the defendant would cause its name to be written across the back of a note executed by Hudson in the manner aforesaid; that the writing of the defendant's name across the back of the said note was obtained by duress, threats and inciting to fear; that the true consideration for defendant's contract guaranteeing the collectability of the aforesaid note of Hudson was not that the plaintiff should grant to said Hudson an extension of time wherein to pay a just indebtedness then due as the petition alleges, but it was, as appears by the premises that the plaintiff should release the cattle of defendant and the said Hudson, which the plaintiff was then and there wrongfully distraining, restraining, and refusing to deliver over to their rightful owner; that there was no consideration for the defendant's contract of guaranty and that the said contract is void and of no binding effect whatever.

A great number of instructions were requested, some of which were refused and will be noticed further on. The trial resulted in a judgment for plaintiff and defendant appealed.

The defendant assails the judgment on the distinctive ground that the court erred in refusing an instruction requested by it which in substance declared that if the jury found that the note in suit was given in consideration that the plaintiff had cared for certain cattle belonging to Hudson and that a part of such care was the pasturing of such cattle on public lands of the United States within an inclosure constructed thereon by plaintiff and the keeping of such cattle from straying away by means of such inclosure so constructed around such pasture, then its verdict should be for defendant, even though it believed that plaintiff may have rendered some lawful services in caring for said cattle. The defendant's refused instructions numbered three and five were similar in their enunciation.

It is not disputed that the consideration of the note was the feeding and pasturing of the Hudson cattle.

Just what proportion of the plaintiff's claim was for feeding and what for pasturing does not appear. It is in effect conceded—or if not it might as well be—that so much of the consideration of the note as was for the pasturage of the Hudson cattle on the public domain was an illegal and non-supporting consideration. The Act of Congress pleaded by the answer declares it to be unlawful and a misdemeanor to erect or maintain any fence inclosing more than 160 acres of the public domain, and provides for the summary destruction of any such fence. [Camfield v. United States, 59 Fed. Rep. 562; s. c., 167 U. S. 518.] We are required to give to the statutes of the United States the same recognition, force and effect accorded to those of this State. [Peltz v. Long, 40 Mo. 532; Carson v. Hunter, 46 Mo. 467; Claflin v. Torlina, 56 Mo. 369.] And it has been settled by a long line of adjudged cases in this State beginning with Boynton v. Curle (1835-37), 4 Mo. 599, and coming down to as late at least as St. Louis Fair Assn. v. Carmody (1899), 151 Mo. 566, that all contracts requiring or tending to encourage, or arising out of, or connected with the performance of an act forbidden by the terms of a statute, which is designed to prevent altogether, not to merely penalize for revenue the doing of an act, are void and unenforcible. [Ehrhardt v. Robertson, 78 Mo. App. 404, and authorities there cited.] In the present case a part of the consideration for which the note was given was for the keep of the Hudson cattle in the inclosure of the plaintiff. It is to be inferred that the contract between the plaintiff and Hudson required that the cattle of the latter should be turned into the plaintiff's inclosure to be therein fed upon the "free grass," or that grown by nature upon the public domain, and the keeping of other cattle, for which no pasturage was paid, out of this part of the inclosed public domain. The use of the inclosure and that of the public domain for keeping and grazing the cattle were component parts of the consideration for which the note was given, and each

of which "was illegal because the primary one was the maintenance of the inclosure, and consequently the occupancy of the public lands" was unlawful. "It is true that we know of no statute that makes it illegal for one person to contract with another for grazing cattle upon the public domain, but it is illegal to maintain an inclosure and thus keep a pasture on the public domain . . although the caring for and keeping the cattle upon the public domain may be lawful, these things coupled with the agreement that they be done in this unlawful inclosure makes the entire contract illegal and void, for the legal cannot be separated from the illegal." [Garst v. Love, 6 Okla. 46.]

But it is contended that as the amount of the feed bill, which was the larger part of the consideration of the note, was legal and valid, and as the remaining part of the consideration was for keep of the cattle only, without including any charge for the grass eaten by the cattle while so confined in the pasture, that therefore no part of the consideration of the note was illegal. The pasturing of the cattle by plaintiff was not gratuitous. He in the first instance claimed a large amount for the use of the grass—for the grazing—but finally, upon the suggestion of his attorney and the arbitrator, he eliminated that and restricted his claim to the amount he had laid out and expended for the employment of "cowboys" to care for the cattle and keep them confined in the pasture. They were used in maintaining the unlawful inclosure on the public domain. The case is not different than if the plaintiff had himself personally attended to the maintenance of the fence and the keeping the cattle in the pasture inclosed by it, and had charged for such services. In which case the use made by him of the unlawful inclosure of the public domain while caring for the cattle would, under the contract, whether express or implied to pay for such service, be illegal and void. It

113 app—27

seems to us that the expenditure for the services of the cowboys, which was a part of the consideration of the note, was for the accomplishment or doing of something which was illegal or inseparably connected with that something; and therefore a claim for reimbursement could not on account of the taint of illegality be recognized or upheld.

The rule is that, when a contract is bad in part it is bad altogether when the two cannot be accurately separated. Within this rule one entire consideration cannot be separated though composed of distinct items, some of which are legal and others illegal. And this rule prevails in Oklahoma—Garst v. Love, supra— and in this State. [Kansas City v. O'Connor, 82 Mo. App. 655; Malone v. Fidelity Co. 71 Mo. App. 1; Friend v. Porter, 50 Mo. App. 89; Peltz v. Long, 40 Mo. 532.] As has already been stated that a part of the care bestowed on Hudson's cattle by the plaintiff was by the means and use of the unlawful inclosure and the cowboys who maintained such inclosure, we cannot doubt that as to the part of the claim for keeping the cattle in the pasture was illegal and therefore the note must be held to have been given without any supporting consideration.

It is true this action is on the contract of guaranty and not the note, but the law is quite well settled that when the principal obligation is void for illegality that that infirmity will extend to and vitiate the contract of guaranty and will constitute a defense open to the guarantor in an action on the guaranty itself. [Kansas City v. O'Connor, 82 Mo. App. 655; Wilkerson v. Hood, 65 Mo. App. l. c. 494-5; Sedalia Ry. Co. v. Smith, 27 Mo. App. 371; Heman v. Francisco, 12 Mo. App. 559; Sumner v. Summers, 54 Mo. 340.] *En passant,* we may say that an examination of Cherokee, etc., v. Cass, etc., 138 Mo. 394, will show that there is nothing in that case trenched upon by our ruling in this.

The conclusion therefore must be that under the pleadings and evidence the defendant was entitled to a

submission of the case upon the theory of its refused instructions already referred to.

The defendant further complains of the action of the court in refusing its instructions VI, VII, and IX, as follows:

"VI. If you believe from the evidence that the note in suit was given by Hudson, and guaranteed by defendant, in consideration that the plaintiff would release certain cattle, and to obtain the release of certain cattle, which the plaintiff was then holding as security to insure payment to himself of a debt claimed by him to be due from Hudson, and if you further believe from the evidence that the debt which plaintiff claimed to be due by Hudson, and for which plaintiff was holding the cattle as security, was owed even in part for the pasturing of these cattle within, and for keeping them from straying by means of a fence erected on the public lands of the United States in Oklahoma, then you are instructed that the detention of the cattle by plaintiff for the purpose of securing such debt so claimed to be due by the plaintiff was unlawful, and that, even although the plaintiff released the cattle upon the giving of said note with defendant's signature on the back thereof, there was no consideration either for Hudson's note, or for the defendant's signing its name on the back thereof, and your verdict must be for the defendant."

"VII. The court instructs the jury that if you find from the evidence that the note in suit was given by Nick Hudson to plaintiff in part or in whole to settle an account or bill of plaintiff against said Hudson for the herding or keeping within the fences or inclosures of plaintiff the cattle of said Hudson or for the pasturage or grazing charges of Hudson's cattle while in said inclosures or fences, and that any part of the land on which said cattle were so grazed or pastured or kept from straying by reason of said fences or inclosures, was United States Government land or public domain or

greater area than 160 acres, then you must find for defendant and return a verdict accordingly."

"IX. You are instructed that under the law of this case plaintiff had no agister's lien on the cattle of Hudson and had no right to detain the same, and if you believe from the evidence that Tandy imposed as a condition for peacefully surrendering the said cattle that defendant should guarantee the note in suit and that the note was for a pasture bill due Tandy for pasturing or caring for said cattle and that defendant complied with said condition in order to peacefully get possession of said cattle, then you are instructed that said guaranty was obtained by duress of goods and was unlawful and your verdict must be for the defendant."

The evidence here showed that the defendant had a mortgage on the Hudson cattle and sought to take possession of them under it. While the plaintiff had possession of the cattle he had no agister's lien on them for the keep and feed. An agister's lien did not exist at common law—Stone v. Kelley, 59 Mo. App. 214; Pickett v. M'Cord, 62 Mo. App. 467—which by adoption was in force in Oklahoma. It was conceded that there was no statute in that territory giving any such lien. Besides this, the defendant's mortgage was antecedent to the agistment lien had there been such, as there was not. [Stone v. Kelley, supra.] The plaintiff's right in any event was subordinate to that of the defendant. He held possession of the cattle and would not surrender that possession to the defendant unless it would pay his illegal charge for the keep and care of the same. It was in November and the near approach of the coming winter warned defendant that the cattle must be removed to where they could be cared for and fed if it desired to preserve its security. Hudson "was not worth 15 cents" and in fact "had laid down," and so could not and would not arrange for the further keeping and care of the cattle elsewhere which was necessary. The defendant, in view of these conditions, had sent its secretary

and treasurer to Oklahoma for the purpose of getting possession of the cattle which was denied to him by the plaintiff unless the latter's illegal charges for the keeping of them were first paid. He was practically confronted with the question whether or not he should pay the plaintiff the amount of these charges or suffer the serious consequences to be reasonably apprehended from a refusal to do so. The payment under such circumstances—or, which was in effect the same thing, the guaranty of the Hudson note—it seems to us was under an urgent necessity—under a kind of moral duress. The evidence, we think, tends to prove that the defendant could secure the release of its security from plaintiff's hands only by the endorsement of its guaranty on the Hudson note. The guaranty was not voluntary and without an immediate and urgent necessity. All of the elements of moral duress were present in the transaction. The guaranty must be deemed to have been exacted and procured under duress and not of defendant's free will. By reference to the late case of Wells v. Adams, 88 Mo. App. 215, it will be seen that what is there said is so pertinent here as to relieve us from saying more in this connection. To the same effect are Niedermeyer v. Curators, 61 Mo. App. 1. c. 659-60; Wilkerson v. Hood, 65 Mo. App. 491; Wolf v. Marshal, 52 Mo. 171.

It is thus seen from what has hereinbefore been stated that the defendant ought not to be held on the guaranty in suit if he was compelled to execute it only through duress of goods and extortion practiced on him by the plaintiff. It follows from these considerations that the instructions last referred to should have been given .

Since it is our opinion that those given supplemented by those which we have concluded should have been given present a fair and full expression of the law applicable to the facts of the case, the others refused for

defendant need not be noticed.   They were all, as we think, properly refused.

Accordingly, the judgment will be reversed and the cause remanded.  All concur.

### ON REHEARING.

ELLISON, J.—Plaintiff insists that since there was an arbitration of the differences existing between the parties that the award in his favor, and execution of the note in compliance therewith, had the effect of eliminating the question of illegality of consideration in the use of the public lands.  We do not concur in that view. The question was asked and answered in the following paragraph: "But can an award springing out of an illegal consideration, which no court can enforce, stand on any higher ground than the contract itself?  Is the contract purged of its illegality by the award?  We think not.  And we apprehend that no authority can be found that goes to this extent."  [Fain v. Headrick, 44 Tenn. 327.]  And it was said in Hall v. Kimmer, 61 Mich. 269, that "a claim being illegal and absolutely forbidden by statute could not lawfully be made the subject of arbitration."  And so, in Benton v. Singleton, 114 Georgia 548, 557, the court said:  "An award depends altogether for its force and validity upon a contract to be bound thereby, made by the person against whom it is returned.  A contract to pay an illegal demand in the event an arbitrator shall say it is just, is no more binding than would be a contract to pay it evidenced by a bond or promissory note.  The form which a contract of this nature assumes in no wise affects the question of its validity."

The weight of authority supports those cases.  The laws in support of a general  public  policy and in enforcement of public morality cannot be set aside by arbitration, and neither will persons with a claim forbidden by the laws be permitted to enforce it through the

transformation process of arbitration. Would anyone say that a claim for money to be paid for the commission of murder may be made sound and legal by being awarded by arbitrators?

Neither can the acceptance of a note for the amount awarded aid a claim for such sum. For, it is out of the power of individuals to legalize that which the law prohibits by executing a contract, the consideration of which is the immediate fruit of the prohibited thing.

The judgment is reversed and the cause remanded. *Broaddus* and *Johnson, JJ.,* concur.