BANKERS MORTGAGE COMPANY, APPELLANT, v. WILLIAM T. LESSLEY, RESPONDENT.*—38 S. W. (2d) 485.

Kansas City Court of Appeals.  Opinion filed May 4, 1931.

*Kirshner & Stroheker* and *Lionel Davis* for appellant.

*Sam C. Major* and *J. H. Denny* for respondent.

CAMPBELL, C.—Plaintiff, a domestic corporation, in December, 1919, entered into a written contract with Albert S. White, which, by its terms, appointed White plaintiff's "sole exclusive fiscal agent" and authorized him to sell the then remaining unissued and unsold portion of its $800,000 authorized capital stock, and an additional $200,000 over and above the present capitalization of the company. It is also recited in the contract that White was given the exclusive right to sell and dispose of said stock, to appoint subagents and assistants and authorized to accept in payment for capital stock sold, "cash,

. . . negotiable notes . . . or other goods, valid and binding evidences of indebtedness." White appointed two salesmen named Okey and Carson who, in company with a Mr. Reynolds, a local banker and relative of the defendant, called upon defendant about April, 1920, and induced the defendant to execute a writing, which is referred to in the record as a subscription for stock, and to execute notes aggregating $13,000. Later, two of those notes, for $1750 each, were in the possession of Reynolds who claimed to be an innocent purchaser. The remaining notes, aggregating $9500, were sent to plaintiff, together with the so-called subscription contract. The sole consideration which the defendant received therefore was the agreement upon plaintiff's part to issue to him one hundred shares of its capital stock.

Plaintiff's vice president and treasurer, a witness in its behalf, said:

"Q. And when he (White) turned those notes over to you, you knew exactly what they were for—for stock in this company? A. Yes, sir."

A certificate of stock was signed and sealed by plaintiff in which it is recited that defendant is the owner of one hundred shares of the capital stock of plaintiff. That certificate was never actually delivered to defendant but was retained by plaintiff as collateral security for the notes. The notes were not paid, although plaintiff made frequent demand for payment, and, finally, in April, 1924, the defendant called at plaintiff's office and there entered into what is called a settlement agreement, by the terms of which it is provided that defendant assigned all of his right, title and interest in and to a subscription contract for one hundred shares of the capital stock of plaintiff and authorized plaintiff's secretary to issue a certificate for one hundred shares of stock in the name of plaintiff or its order. At this time the defendant executed to plaintiff three notes, two for $1000 each, and one for $2000.

The foregoing facts appear from the testimony on plaintiff's behalf, and in the view we take of the case, further statement is unnecessary.

The defendant refused to pay the notes last mentioned, and thereupon the plaintiff brought suit to recover the amount claimed to be due thereon. A trial resulted in a verdict and judgment in defendant's favor, and plaintiff has appealed.

The defense interposed by answer is that the original notes were given to plaintiff in payment for one hundred shares of its capital stock and are therefore illegal and void under the provisions of **article 12, section 8, of the Constitution of Missouri, and section** 9740, Revised Statutes 1919.

It is averred in the reply that plaintiff was at all times willing to deliver to defendant all stock subscribed for by him upon payment

being made therefore; denies that the notes sued on were renewals of the notes previously given, and alleges that they were "given and accepted under an agreement for compromise and settlement of a claim of this plaintiff against defendant."

It is further averred that plaintiff, in good faith, demanded that defendant pay the original notes, and thereupon the parties entered into a new agreement for the compromise and settlement of the original notes, and that in pursuance of and in accordance with said compromise and settlement, the defendant surrendered to plaintiff his rights under the subscription contract, offset a payment of $100 made by him and gave to plaintiff the three notes sued upon as a part of the consideration for said settlement and compromise; that said new agreement was entered into and carried out by both plaintiff and defendant in good faith and under the honest belief by both that the demand of plaintiff for payment of the notes then held was valid and maintainable. The reply does not specifically deny that the original notes were given in payment for shares of stock in plaintiff company.

While not admitting that the original notes were illegal and contrary to the constitutional and the statutory provisions above referred to, plaintiff at the trial, asked no instruction on that subject, but did request an instruction in harmony with the averments of the reply, to the effect that if the jury found and believed that the notes sued upon were given in settlement and compromise of a previous note and a stock subscription contract, and under a new agreement for the purpose of compromise and settlement of said note and contract, then the plaintiff was entitled to recover.

Plaintiff contends that the evidence shows that the consideration for the notes in suit was the surrender of defendant's agreement to purchase stock.

The Constitution, as well as the statute, prohibits a corporation from accepting a note in payment for its capital stock. [Hunter v. Garanflo, 246 Mo. 123; Hamilton v. Hander, 293 S. W. 341.]

If plaintiff could lawfully sell one hundred shares of its stock and accept the defendant's notes, then it could have sold all of its unissued stock and accepted a note or notes therefor.

It is claimed that defendant was liable .upon the subscription contract and that the surrender thereof was a consideration for the notes in suit. We do not think so. The subscription contract was not introduced in evidence, nor is there any showing as to its terms. Even if there was, it would not alter the situation. That contract and the original notes were executed at the same time. The subscription contract was not for stock in a corporation to be formed, but, at most, could be nothing more than a subscription for stock in a corporation then existing. The notes were the prin-

cipal contract, were illegal, and the whole transaction was therefore illegal.

If defendant's conduct in executing the notes in suit amounts to a recognition of validity of the original notes, such act amounted to nothing. [Park, Davis & Company v. Mullett, 245 Mo. 168, 175, 149 S. W. 461.]

"And if the contract in fact be one connected with the illegal or immoral transaction and growing out of it, it is equally tainted." [Wolffolk v. Duncan, 80 Mo. App. 421, 427.]

In the case of Tandy v. Commission Company, 113 Mo. App. 409, 87 S. W. 614, the plaintiff asserted a demand based upon an illegal contract. The parties submitted their differences to arbitration. The arbitrator made an award in favor of the plaintiff, and the defendant thereupon executed a note for the amount of the award.

The court said:

"Neither can the acceptance of a note for the amount awarded aid a claim for such sum. For, it is out of the power of individuals to legalize that which the law prohibits by executing a contract, the consideration of which is the immediate fruit of the prohibited thing."

The situation is not altered by the fact that neither the constitution nor the statute in terms provide that contracts made contrary to their provisions shall be void. [Swing v. Company, 77 Mo. App. 391.]

Inasmuch as the illegality of the notes sued upon appears in the evidence introduced by plaintiff, other questions presented in the case need no attention. Plaintiff produced proof showing as a matter of law that it was not entitled to recover. The judgment is affirmed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion by CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur, except *Trimble, P. J.,* absent.