CHARLES E. SHAFER ET AL., RESPONDENTS, v. HOME TRADING COMPANY, M. T. BLICKENSDERFER, MRS. M. T. BLICKENSDERFER, RUSSELL MUMFORD, SEYMORE WILLS AND MARTIN BLICKENSDERFER, APPELLANTS.—52 S. W. (2d) 462.

Springfield Court of Appeals. August 22, 1932.

*Haymes & Dickey* for appellants.

*Phil M. Donnelly* and *A. W. Curry* for respondents.

BAILEY, J.—This is an action by a stockholder of defendant Home Trading Company, a corporation, to compel the board of directors of said company to account for their official conduct in the management and disposition of its funds, property and business; to require them to re-pay the corporation all funds and the value of all property retained by them or transferred to others in violation of their duties; to suspend them from exercising their offices and for the appointment of one or more receivers to take charge of the property of defendant corporation and account for its assets for those entitled thereto. The trial court denied the relief sought and rendered judgment for defendants. Plaintiff has appealed.

Plaintiff's bill states that the Home Trading Company has an authorized capital of $28,000, of which $20,000 is common and $8000 is preferred. All the common stock is alleged to be owned by defendants M. T. Blickensderfer, Mrs. M. T. Blickensderfer, Russell Mumford, Seymore Wills, Martin Blickensderfer and Wills Blickensderfer, all of whom are related by blood or marriage. It is further alleged that only $4000 of the preferred stock has been issued, all of which, is owned by plaintiff. These allegations are admitted to be correct.

As grounds for the relief sought plaintiff makes eight specific charges, some of which are admitted. These will be considered in order. It is charged that defendant, M. T. Blickensderfer, President of the Home Trading Company, has borrowed $2000 from said corporation and that the note given therefor by him has been permitted to run for a number of years; that no part of the principal and no interest, which now amounts to $980, has been paid; that the officers and directors of the corporation have failed and refused to take any steps to collect this indebtedness, which is long past due. This charge is admitted by defendant M. T. Blickensderfer. The note referred to is dated April 1, 1923, payable twelve months after date with interest at the rate of six per cent per annum. This note would, of course, become outlawed in April, 1934, unless some payment should be made thereon before that time. The Board of Directors of defendant corporation consists of M. T. Blickensderfer and members of his family or relations by marriage. He testified it would not be right for the corporation to sue him on the note, but did not explain why. This charge is, we think, sustained by the evidence.

It is further charged that plaintiff owns preferred stock in the corporation and has owned it for a period of eight years and that no dividend has been paid during that period of time; that plaintiff purchased said preferred stock with the understanding and agreement that said corporation would employ him at a salary of $100 per month, which was later reduced to $90 per month; that M. T. Blickensderfer, acting for said company, has wrongfully and maliciously discharged plaintiff; that said company now owes plaintiff for services under the terms of said agreement.

As to this charge, defendant M. T. Blickenderfer admitted that the agreement, as set forth above, was made, and that plaintiff, after being employed under the agreement from 1923 to May, 1931, was discharged. On this phase of the case he testified as follows: "Mr. Shafer was discharged in May, and immediate cause of discharge was his suing the corporation which I considered an injury to it. He brought at least one suit and there were other reasons for the discharge. I could get a man for less money and he was doing things

I thought injurious to the business. In conversation with Lee Webster he said he was expecting a receivership and said they could buy things better. I didn't know what he said to Rogers and Baldwin. That I was afraid was an injury to the business. I thought I was pretty well satisfied he talked to Mr. Tribble of the Witte Hardware Company, whom I had given an order. I don't know what was said between him and Tribble. That order was returned to me the next morning and I destroyed it. That was after he talked to Shafer. Shafer and I talked about business, collection of accounts and notes and I tried to induce him to make the collection of those his special business and I think he made efforts as I did. Up to first filing of this proceeding we were going along about the same."

Plaintiff admitted having a conversation with Lee Webster, a customer of the store, in which he told him he thought he could sell him a plow "right," if he could ever get an "understanding." Defendants take the position that plaintiff, under this line of evidence, was guilty of disloyalty to the corporation and that therefore he does not come into a court of equity with clean hands. It appears, however, that at the time of this occurrence, plaintiff had already instituted a suit against the corporation. No complaint is made as to the loyalty of plaintiff during the seven or eight years he was employed previously. His conduct as above set forth might be a defense against a suit on the contract by which he was entitled to employment, but not of such importance as to invoke the equity rule as to "unclean hands" relied upon by defendants. While this charge against defendants is sustained by the evidence, there was some justification for plaintiff's discharge from defendant company's service and we consider the issue of little importance either way.

Charge three relates to the admitted fact that the corporation employs three members of the Blickensderfer family. There is no charge that the salaries paid them are too large or that they are unnecessary employees, or that they are incompetent to perform their duties. That the corporation is owned almost entirely by the Blickensderfers is admitted. It is not unusual, however, for such a state of affairs to exist and that in itself is of little weight.

The fourth charge relates to the fact that the corporation sold four shares of stock to Martin Blickensderfer for the sum of $200 when the par value of the stock was $400 and took in payment therefor his personal note. While the evidence sustains this charge, plaintiff's own evidence indicates the stock was worth much less than 50 per cent of its par value at the time it was acquired. The same is true as to charge five relative to stock purchased by Wills Blickensderfer, for which he gave his personal note. The evidence further shows, however, that the corporation illegally acquired the stock

sold to Martin and Wills by trading property of the corporation for the stock. A corporation has no authority to trade its property in purchase of its outstanding stock, the effect of which is to illegally reduce its capital. [Potts-Turnbull Advertising Company v. Gatchell, 257 S. W. 134, l. c. 139; St. Louis Carriage Manufacturing Co. v. Hilbert, 24 Mo. App. 338.] Moreover, granting that it had legally acquired the stock, it is prohibited from accepting a note in payment of its capital stock. [Bankers' Mortgage Co. v. Lessley, 38 S. W. (2d) 485, l. c. 486.]

The fourth and fifth charges in plaintiff's petition must therefore be sustained. The sixth charge, relative to illegal purchase of stock by the corporation, is also sustained under the above ruling.

The seventh charge is that certain customers of the corporation owed the corporation but refused to pay their bills because the President of the company, M. T. Blickensderfer, owed them personally, and that no effort was made to collect these accounts, and in that way the corporation was used for the personal gain of said M. T. Blickensderfer. There is some evidence tending to support this charge.

The eighth and final charge relates to falsification of reports sent in to the State supervisor of corporations of the State of Missouri. This charge is supported only by plaintiff's opinion as to the value of the assets of the corporation and there is no proof of intentional wrongdoing in that respect.

The power of the circuit court invoked in this action is contained in section 4959, Revised Statutes 1929, which reads in part as follows: "The circuit court shall have jurisdiction over the directors, managers, trustees and other officers of corporations now existing or hereafter organized under and by virtue of this article; First, to compel such directors, managers, trustees and other officers to account for their official conduct in the management and disposition of the funds, property and business committed to their charge; second, to order, decree and compel payment by them to the corporation which they represent, and to its creditors, of all sums of money and of the value of all property which they may have acquired to themselves, or transferred to others, or may have lost or wasted by any violation of their duties or abuse of their powers as such directors, managers, trustees or other officers of such corporation; third, to suspend any director, trustee, manager or other officer from exercising his office whensoever it shall appear that he has abused his trust; fourth, to remove any such director, trustee or other officer upon proof or conviction of gross misconduct; fifth, to direct, if necessary, new elections to be held by the body, or board, or stockholders, duly authorized for that purpose, to supply any vacancy created by such

removal, and at such election no person so removed or suspended shall be eligible as a director, trustee or other officer of such company; sixth, to restrain and prevent any alienation of property of the company by said directors, trustees or other officers, in cases when it may be threatened, or there is good reason to apprehend, that it is intended to be made in fraud of the rights and interest of such company. [R. S. 1919, sec. 10169.]"

It seems unnecessary to go into a detailed discussion of the evidence in this case. No one can read this record without coming to the conclusion that plaintiff, as holder of all the issued preferred stock, is entitled to some protection against the directors and defendants of this corporation who are practically all of one family. While the necessity of appointing a receiver at this time does not necessarily follow, the trial court should have required an accounting from the officers and directors of the corporation as provided in the statute above set forth; it should have heard the evidence in regard thereto and compelled them to account for or pay to the corporation all property, monies or stock, illegally acquired; it should further have exercised any and all other powers given to it by statute authorized under the evidence in this case.

As above indicated, the appointment of a receiver is not essential to the exercise of the jurisdiction and control of the circuit court provided in section 4959, supra. The statute provides under section 4960, Revised Statutes 1929, that, "In proceedings under this article, the court may appoint one or more receivers to take charge of the business, property and effects of such corporation, and to collect, sue for and recover the debts and demands that may be due, and the property that may belong to such corporation, who shall in all respects be subject to the control of the court. [Revised Statutes 1919, sec. 10170.]"

This is a drastic statute which should only be invoked when all other remedies fail. [Delcambre v. Murphy (Mo.), 5 S. W. 789; Blades v. Billings Merc. Co., 134 S. W. 579, 154 Mo. App. 350.]

The rule that a receiver should never be appointed unless it appear the plaintiff has attempted and exhausted all remedies within the corporation itself is well recognized. [State ex rel. v. McQuillin, 260 Mo. 164, 168 S. W. 924; Helm v. Talmage, 40 S. W. (2d) 496.]

In the case at bar we think the evidence would justify the circuit court in compelling an accounting of the defendant Board of Directors and a judgment against such of them as may be found to be indebted to the corporation. We find no necessity for the appointment of a receiver at this time. A receiver should, however, be appointed by the trial court if found necessary in order to preserve the property and safeguard the interests of plaintiff. It is therefore our

judgment that this cause be reversed and remanded with directions that the trial court enter a decree compelling defendants to make an accounting, that the illegal transfers and purchase of stock be revoked and that defendants be required to make restitution for all stock or other property illegally acquired or retained by them. It is so ordered. *Cox, P. J.*, and *Smith, J.*, concur.