Don ROTH, et al., Coreceivers of Presidential Investment Company, Inc.,
Appellants,

v.

L. Ermalee WALLAR, et al., Respondents.

Nos. 55521, 55522 and 55624.

Supreme Court of Missouri,
Division No. 2.

Feb. 8, 1971.

Max W. Foust and Duke W. Ponick, Jr. of Morris, Foust, Moudy & Beckett, Kansas City, for appellants.

C. William Kramer, Piedimonte & Cochran, Independence, for respondents.

BARRETT, Commissioner.

These consolidated appeals by receivers of Presidential Investment Company are from summary judgments in favor of defendants, the makers of three notes. The cause involves, allegedly, Article 11, Section 7 of the Constitution as implemented by RSMo 1969, §§ 351.160 and 351.165 V. A.M.S.; from the Constitution "No corporation shall issue shares * * * except for money paid * * *," and from one of the statutes; "No note * * * shall be considered as payment of any part of any share or shares * * *." RSMo 1969, § 351.165. Compare Bankers' Mortgage Co. v. Lessley, Mo., 31 S.W.2d 1055.

The controversy and the appeal arose in these circumstances: In August 1967 Presidential Investment Company instituted conventional suits on notes against the makers. In each case the petition simply alleged the execution of the notes for $10,-000.00, $7500.00 and $7500.00, and the failure of the individual signers and makers to pay. In September 1967 the defendants filed motions to dismiss, these were overruled and in November 1967 the defendants all filed answers in which they admitted execution of the notes but denied their "legal force and effect" because they were "issued as payment for shares of capital stock in the plaintiff corporation and (are) therefore illegal, void and unenforceable under the applicable provisions of Missouri law." In connection with Presidential's suits interrogatories were submitted and insofar as material here the defendant Bai-

ley answered that he was to pay for the shares of stock, the purchase price of which was his note for $10,000.00 out of "monies received from commissions for selling insurance policies to be issued by the plaintiff." In another paragraph he alleged that his note was given for 750 shares of capital stock in the plaintiff corporation. Shank and Mr. and Mrs. Wallar answered that their two notes were given as the purchase price for 750 shares of original stock issue, that no stock certificates were ever delivered and that they had received nothing for signing the notes. In the Shank case the next entry in the transcript is a motion for summary judgment. Following that entry, on September 12, 1969, there is a motion to substitute the present appellants, Don Roth and Larry Belger, federal court-appointed receivers as parties plaintiff in lieu of Presidential Investment Company. In the other two cases the motions to substitute the receivers as plaintiffs preceded the defendants' motions for summary judgment "on the grounds that the pleadings and sworn interrogatory answers filed herein show that the defendants are entitled to judgments in their behalf as a matter of law." In each case the plaintiffs filed motions for summary judgment. The court overruled the plaintiffs' motions and in each case sustained the defendants' motions: "Defendant's motion for a summary judgment is sustained."

Upon this appeal the respondent note makers take the position that the receivers stand in the shoes of the original corporate plaintiff and that "(t)he Constitution, as well as the statute, prohibits a corporation from accepting a note in payment for its capital stock." Bankers' Mortgage Co. v. Lessley, Mo.App., 38 S.W.2d 485, 486; Shafer v. Home Trading Co., 227 Mo.App., 347, 52 S.W.2d 462, 463. The consequence being that "The taking of plaintiff's note of $10,000 for eight hundred shares of stock was therefore illegal and unauthorized. We hold therefore that the defendant corporation has no standing in a court of equity to enforce against plaintiff a

contract or note which was the result of illegal trafficking in the stock of the corporation." Townsend v. Maplewood Investment & Loan Co., 351 Mo. 738, 745, 173 S. W.2d 911, 914. The parties, neither appellants nor respondents, cite or rely on any other cases except appellants cite an A.L. R. annotation.

The appellants concede the general rule to be as indicated, they admit that "a corporation cannot enforce notes given for its original issue of capital shares." They contend, however, that the noted rule does not apply "(w)here, however, as in the instant three cases, the parties seeking to enforce the notes are the receivers of the corporation," in that circumstance they say "that a different result is required." From the Townsend case they rely on the sentence following the above quotation: "What we have said herein is *not to be construed as affecting the rights of creditors* against any of the parties in this suit." (173 S.W.2d l.c. 914, emphasis supplied.) The appellants refer to this quotation from the annotation 78 A.L.R.2d 834, 864 (emphasis supplied): "Where suit on the note is brought *after the corporation has failed, by a receiver*, trustee in bankruptcy, or other official *on behalf of the creditors of the corporation,* the general rule is that recovery may be had on the note, *since the purpose of the statute is to protect creditors and other stockholders,* not the stockholder who, by executing a note in payment for stock, has enabled the corporation to hold him out as a stockholder."

The problem said to be involved here, whether the noted rule applies to receivers, is novel in this jurisdiction. There are, however, persuasive cases elsewhere. In Brockington v. Scott, 381 F.2d 792, the fourth circuit had this to say when a trustee in bankruptcy was plaintiff: "Brockington argues that since the use of promissory notes as consideration for corporate shares is prohibited by statute in South Carolina, the notes are not enforceable against him. He relies on the principle of pari delicti; that is, in this instance, where

both parties are equally at fault in participating in the unlawful sale of stock the courts should aid neither. The district court rejected Brockington's position. Citing the South Carolina case of Greenville & Columbia R.R. Co. v. Woodsides, 39 S.C.L. (5 Rich) 145 (1851), the district court held that the illegality of the transaction does not void the notes, since the statutory prohibition is maintained for the protection of the corporation and its creditors, and not to aid a participant in the illegal transaction. We agree in the present context, and in so doing are in accord with the general rule." See also other suits by receivers, Allen v. Edwards, 93 Miss. 719, 47 So. 382, and Thompson v. First State Bank, 109 Tex. 419, 211 S.W. 977. Elsewhere this rule is stated in this language "When suit on the note is *brought after the corporation has failed, by a receiver,* trustee in bankruptcy, or other official *on behalf of the creditors of the corporation,* the general rule is that *recovery may be had on the note, since the purpose of the statute is to protect creditors and other stockholders."* 11 Am.Jur.2d (Bills & Notes) Sec. 266, p. 294; 19 Am.Jur.2d (Corporations) Sec. 797, p. 276; 11 Fletcher, Cyclopedia Corporations, Sec. 5196, pp. 577–578.

The positions of the parties and the rules have thus been noted with emphasis to indicate that in the posture of the records in these three cases a summary judgment should not have been entered for either party. Obviously, by the time the court entered judgment for the defendants, the cause was no longer in a posture compelling application of the general rule—the corporation against the note maker. The corporation, Presidential Investment Company, was no longer a party to the suit, there had been a substitution of parties and the federal court-appointed receivers had become party plaintiffs and there was and is no objection, nor could there be, to their substitution. 39 Am.Jur. (Parties) Sec. 100, p. 970. It is said by the respondents that the receivers "acquired no rights greater than those of the estate to which

he succeeds" and are therefore subject to the same defenses available against the corporation. In general that may be true but not necessarily so, even a subscriber to capital stock may not always defend against a receiver because he "represents the corporate creditors" (45 Am.Jur. (Receivers) Sec. 443, p. 350) and as indicated by the Brockington case and elsewhere the theory and basis upon which the note maker is relieved of liability no longer obtains after the appointment of a receiver and, in any event, the purpose of the statute is to protect creditors and "other stockholders" not the defaulting signer of the note. On the other hand there is nothing in these records to definitely show, as the appellants assert, that they are representing creditors or even "other stockholders." As a basis for their substitution the receivers "attached hereto and made a part thereof" a copy of the order of the United States District Court finding the necessity for and the appointment of the substituted parties as "temporary coreceivers" of all properties and assets of Presidential and, it may be said, they are given wide authority. But there is no finding that Presidential was insolvent or that receivers were appointed for that reason. The court found that certain individual suits were pending in Illinois against Presidential, that 202,000 shares of stock had been purchased or subscribed by about 2305 persons and that if the Illinois suits were prosecuted to judgment "an inequitable preference" could result to others in the same class and therefore the receivers were appointed and among other things authorized "to institute, prosecute and defend, *intervene in, or become a party* to such proceedings in State or Federal Courts as in their opinion is necessary or proper for the protection, maintenance and preservation of assets of defendant Presidential." Thus it does not appear that the corporation is insolvent or that the receivers are representing creditors, if any, or stockholders, if any, or whether as a matter of fact they are acting in the capacity of the corporation in the

character in which the suit was originally instituted.

Thus the record and facts upon which summary judgment is sought are at best inconclusive, so inconclusive that the general purposes of summary judgment may not operate—that is to immediately reach the merits of the controversy; in short, it does not appear by "unassailable proof" which of the parties is entitled "as a matter of law" to judgment. Civil Rule 74.04, V.A.M.R. Or as said in Wright v. Wrehe, Mo., 415 S.W.2d 781, 783, " 'The proof submitted should leave no room for controversy and should show, affirmatively, that the other party would not be entitled to recover under any discernible circumstances.' " There is more than a lesson in the facts of that case, a suit to recover damages for personal injuries by reason of a fall on steps from defendant's premises to a sidewalk. Upon proof of the relationship of landlord and tenant the court entered summary judgment against the landlord. The court said, "whether the defendant is liable for failure to make repairs cannot be determined as a matter of law by a mere showing that the relationship of landlord and tenant exists" and, for that reason the judgment was reversed. And upon this appeal and review anew of this court-tried case (Title Insurance Corp. of St. Louis v. United States, Mo.App., 432 S.W.2d 787, 790), this court upon this record could not confidently and summarily enter judgment as a matter of law and accordingly the judgments in all three cases are reversed and remanded for such further proceedings as the parties may deem appropriate.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

STOCKARD and PRITCHARD, CC., concur.

All of the Judges concur.